WADE & HUGHES v. H. C. ODLE ET AL.

Decided November 25, 1899.

1. Evidence—Intention.

Since, under the statute, parties to the suit and transaction may testify, it is competent for them to state their intentions where the validity of an act in question depends on the intention.

2. Deed of Building Carries Ground Upon Which It Stands.

A mortgage conveying a building which is a fixture and part of the realty will carry the land upon which it stands unless clearly severed therefrom by the terms of the conveyance.

3. Deed of Trust for Partnership Creditors—Individual Debts Included.

A trust deed of partnership property is not invalid as to accepting partnership creditors because it includes individual creditors among those preferred, but will not be given effect as to such latter creditors.

4. Same—Preferring Creditors—Knowledge of Fraud.

That a deed of trust preferring certain creditors was made with intent to delay and defraud other creditors, and that this was known to the trustee, will not defeat the deed unless it be further shown that the accepting creditors knew of such fraudulent intent and participated therein.

5. Same—Sale to Trustee—Attaching Creditors.

Attaching creditors claiming adversely to a trust deed can not have a sale thereunder set aside because made to its trustee.

6. Same.

Where the property conveyed in a trust deed to secure preferred creditors is of less value than the debts secured thereby, an attaching creditor can not complain of any provision in the deed which would merely tend to delay or hinder unsecured creditors, if the debts secured are just and true and the secured creditors are innocent of any fraud.

APPEAL from Bosque. Tried below before Hon. J. M. HALL.

N. J. Wade and Lumpkin & Alexander, for appellants.

W. M. Knight and Lockett & Kimball, for appellees.

HUNTER, ASSOCIATE JUSTICE.—This suit of trespass to try title was brought by appellants to recover of H. C. Odle lot No. 3 and 18 inches off the north side of lot No. 2, on which stands the stone building known as Odle Brothers' storehouse property, in block 4 of the city of Meridian. For opinion on former appeal, see 46 Southwestern Reporter, 887, 47 Southwestern Reporter, 407.

Both parties claim title under Odle Brothers, a firm of merchants composed of John S. Odle and J. W. Odle, as common source. Appellants claim through a judgment against Odle Bros., execution sale, and constable's deed to the National Wall Paper Company, and from said wall paper company to appellants; while appellee H. C. Odle claims through a deed of trust from Odle Bros. to him and Adams as trustees for the benefit of certain creditors, and sale made thereunder, with deed from the trustees to Estes, and deed from Estes to John Odle, Sr., and one from John Odle, Sr., to H. C. Odle.

The case was tried by a jury, who found in favor of defendants, and judgment was entered accordingly, and from that judgment this appeal is taken.

The facts disclosed by the record show a title in appellants sufficient to entitle them to recover the premises sued for, if in addition thereto they established that the deed of trust or mortgage dated June 24, 1896, from Odle Brothers to Adams and Odle, trustees, for the benefit of creditors, was fraudulent and void; otherwise they were not entitled to recover.

This deed of trust or mortgage conveyed the property in controversy to the trustees aforesaid in the following terms: "All that certain tract, lot, or parcel of land situated in the city of Meridian, in said State and county, described as lot No. 3, in block No. 4, as shown by the plat of said city on record in the office of the county clerk of said county, and known as the Odle Bros.' storehouse and property, together with all and singular the tenements, hereditaments, and appurtenances to the same belonging, incident, or anywise appertaining." It was given to secure six preferred creditors whose debts aggregated $1685, among which was the D. O. Barton debt of $350, and that of John Odle, Sr., for $100, these being individual debts due from J. W. Odle; also the J. J. Lumpkin debt of $150, which was an individual indebtedness due from John S. Odle, and for neither of these three debts was the firm of Odle Bros. in any way bound.

These six creditors were to be paid in full before anything should be paid to eight other creditors whose debts aggregated $1410.80, all of whom were partnership creditors, and among them the National Wall Paper Company, whose debt was $175.04. These eight partnership creditors were to be paid pro rata after the preferred six were paid in full. It was provided that in the event Odle Bros. did not pay these debts at maturity, then the trustees might, at the request of said creditors or either of them, sell said property for cash at public auction at the courthouse door, after giving notice as required by statute, and that sale should be made within six months after request by any creditor after Odle Bros. failed to pay at maturity of debt. It was also provided that if the trustees should conclude that it would be for the best interests of the creditors, they might, instead of selling as provided above, bring suit in the District Court of Bosque County to foreclose the lien of this deed of trust, said suit to be brought to the first term of said court after request made by any of said creditors for sale as provided for. This mortgage was duly acknowledged and recorded on June 24, 1896.

The evidence is conflicting as to whether it was made with intent to hinder, delay, and defraud creditors, but sufficient to support a finding either way. The property was worth from $2000 to $2500, and was all that the firm or the members thereof had except exempt property. The debts secured aggregated $3095.80, and were all that they owed, both partnership and individual. The firm was insolvent.

The following preferred creditors accepted the mortgage: First National Bank of Meridian, $800 (H. C. Odle, trustee, being surety for this debt); W. M. Johnson, $175, and H. C. Hughes, $110. Of the second class the following accepted: G. Y. Smith & Co., $19.65; Chas. E. Lewis & Co., $49.56. It is not shown that any of these creditors had notice of any fraudulent intent of Odle Bros. in making said mortgage, but two of them, the bank and Johnson, prove that they had no such notice or knowledge.

On December 9, 1896, H. C. Hughes, one of the accepting creditors, requested the trustees to sell the property, and they did sell it on January 5, 1897. H. C. Hughes' claim was in fact for only $29.80, while the mortgage put his claim at $110, but this seems to have been an innocent mistake. At the sale by the trustees J. H. Estes bid in the property at $500. This was done under an agreement with H. C. Odle, one of the trustees, who agreed with Estes to accept his check for the price of the property and protect it. The check was accepted by H. C. Odle and torn up, but H. C. Odle paid that amount and more to the accepting creditors on their debts.

Estes soon afterwards, on January 8, 1897, conveyed the land to John Odle, Sr., for an expressed consideration of $1500, but in fact nothing was paid by said Odle to said Estes, and later, July 20, 1897, John Odle, Sr., conveyed it to H. C. Odle for an expressed consideration of $2000, but no part of this consideration was paid or intended to be paid.

H. C. Odle admits, and we find, that at the trustee's sale Estes bought in the property for him, H. C. Odle, under an agreement between them previously made, and these latter conveyances were but a device to conceal the true transaction. John S. Odle and J. W. Odle and the trustee H. C. Odle were brothers. John Odle, Sr., was their father. J. W. Adams, the other trustee, married a daughter of John Odle, Sr., and was, of course, brother-in-law to the sons.

H. C. Odle required his two brothers to join his father in the deed to him, because, as he considered, the eighteen inches off the north side of lot No. 2 was not embraced in the trust deed or mortgage. This eighteen inches was conveyed to Odle Bros. by Hughes and wife, May 30, 1894, and is described by metes and bounds, while lot 3 had been conveyed to them by other and different parties October 1, 1891. The intention of Odle Brothers was to include the whole building in the deed of trust, but this eighteen inches was not specifically described at the time, because it was overlooked.

It is earnestly insisted by appellants' counsel that the deed of trust is void on its face, and that it ought to have been excluded from the jury on objections to its introduction made at the time it was offered. These objections, eleven in number, were clearly and distinctly made, and attack it from every conceivable standpoint; but we are unable to find any authority which would justify us in sustaining any of them and excluding the deed from the jury. Nor is there any new point raised which it would be profitable to discuss.

On the trial H. C. Odle, trustee in the deed of trust, was permitted to testify that "he had no knowledge whatever of any fraudulent intent or of any intent on the part of Odle Bros. to hinder or delay their creditors in making the deed of trust. There was no secret agreement or understanding between them and him that he was to handle the property and become owner of it. Neither was there any secret understanding or agreement between them by which any of their property was to be covered up or secreted. His intention in accepting the position of trustee was to endeavor to go ahead and execute the trust, and to sell the property for every dollar he could, and if possible make it pay every dollar they owed." J. W. Adams testified substantially the same, and so did the two Odle brothers, grantors in the trust deed.

The principal objections interposed at the time were that the evidence was self-serving, irrelevant, incompetent, and immaterial, and in no manner binding on appellant. We think the evidence was competent, relevant, and material. Since parties to the suit and parties interested in the transaction are permitted by our statutes to testify, we see no reason why they may not testify what their intentions were, especially where the intention with which the act was done may render the act void or not. The intention accompanying the act is often the very gist of the inquiry, and may be inferred from other evidence, and if it may be proved or disproved by inference, why not by positive testimony from those who actually know? The credibility of the interested witness and the weight to be given his evidence, of course, are matters exclusively for the consideration of the jury; but the evidence was competent, relevant, and material. Robertson v. Gourley, 84 Texas, 575; Hamburg v. Wood, 66 Texas, 176; Dittman v. Weiss, 31 S. W. Rep., 67.

The assignments of error relating to the charge given by the court, and those complaining of the court's action in refusing to give special charges asked by appellant, have all been carefully considered by us and we have found no error which would justify us in reversing the judgment. The apparent errors in some of the paragraphs of the charge given are clearly explained away by the counter-propositions and statements in the brief of appellees' counsel, and we therefore overrule all of said assignments.

We think that the title to the eighteen inches of the north side of lot 2 passed to the trustees by virtue of the description contained in the mortgage, as indicated on the former appeal in this case (46 Southwestern Reporter, 888), although only lot No. 3 is mentioned. These eighteen inches were covered by and sustained the south wall of the stone storehouse "known as Odle Bros.' storehouse and property." The writer thinks that the precise question raised here has been decided by our Supreme Court, to the effect that the conveyance of the house would from necessity carry the title to the land upon which it stands and to which it was annexed, but after diligent search through all the digests he has been unable to find the case, and we must therefore treat the

question as one of first impression in this State, and support our views by the decisions of other States and our own reasoning.

The land upon which the walls of a stone or brick building rest, or, indeed, of any other kind of building which in law is considered as annexed to the soil, and which is not clearly severed therefrom by the terms of the deed itself, must be considered, in our opinion, as part of the building itself, and a sale of the building therefore would carry the title to the land upon which it stands. This view is fully supported by the following authorities: Pottkamp v. Buss (Cal.), 31 Pac. Rep., 1121; Godden v. Cannon (Iowa), 77 N. W. Rep., 82; Davis v. Handy, 37 N. H., 69; Endsley v. State, 76 Ind., 467, Id., 33; Woodman v. Smith, 53 Me., 80; Johnson v. Raynor, 72 Mass. (6 Gray), 109; Allen v. Scott, 38 Mass. (21 Pick.), 28; 2 Dev. on Deeds, sec. 863.

We have found only one case to the contrary, Baltimore Building Association v. Bethel (N. C.), 27 Southeastern Reporter, 29, but it is almost precisely in point. But for the reason given, and upon the authorities cited, we are of opinion that the eighteen inches of lot 2, upon which one wall of the building stands, passed by the mortgage to the trustees, and that appellant got no title to it by his subsequent levy of execution thereon and purchase thereunder.

Appellants contend that the mortgage was void because by its provisions debts were preferred and secured which the partnership or firm did not owe, but which were the individual debts of the members of the firm. It appears that the debt to Barton of $350 and the one to John Odle, Sr., of $100 were the individual debts due from J. W. Odle, and that the $150 due to Lumpkin was the individual debt of John S. Odle. This point is raised on objections to a paragraph of the court's charge, which is as follows: "You are instructed that where a partnership or firm owes partnership or firm debts and they make a deed of trust, they have no right to seek to pay off the individual debts of the partners until all the partnership debts are paid. And the preference given to the individual debts of the partners would be void as to said debts, but same would make trust deed void as to partnership creditors.

We think the charge was correct in asserting that such provisions would not render the deed of trust void as to the partnership creditors named therein as beneficiaries. The wall paper company was named as beneficiary, though of the second class, but this would have entitled it to contest the right of the individual creditors to share in the partnership assets and to settle the equitable priorities and rights of the different creditors therein, had it elected to take under the deed of trust. These were honest debts, it seems, and were therefore properly included in the instrument; but belonged probably not to the first or second class of creditors named, but to a third or last, as they would only be entitled, upon the marshaling of assets, to payment out of the interest of the individual partners left after payment of all the firm debts. The inclusion of these individual debts, therefore, though an attempt was made to prefer them, would not render the deed of trust void, but only the

attempted preference, and the wall paper company having repudiated the trust deed and seized the property under execution, can have no voice or interest in this trust estate or fund, and is not concerned in the question of priority or preferences.

There remains but one other question which we consider it necessary to notice, and that pertains also to the issue of fraud. It is contended by appellants that the deed of trust or mortgage was made by Odle Bros. with intent to hinder, delay, and defraud their creditors, and that the trustees had notice of such intent and participated therein. This, if established, would render the instrument void, provided it was further shown that the accepting creditors, for whose benefit the mortgage was made, also had notice or knowledge of such fraudulent intent on the part of the grantors; but it seems to be well settled that unless the accepting creditors had notice of and participated in the fraudulent intent of the grantors the instrument would be valid as to those who were innocent, and the trustees would be bound to execute the trust for the benefit of such as had no notice of the unlawful intent of the grantors. Sutton v. Simon, 91 Texas, 638; Rider v. Hunt, 6 Texas Civ. App., 238; Kraus v. Haas, 6 Texas Civ. App., 665; Shoe Co. v. Lastinger, 26 S. W. Rep., 925; Pittman v. Grocery Co., 15 Texas Civ. App., 676; Lintz v. Atchison, 14 Texas Civ. App., 647; Mason v. Mars, 17 S. W. Rep., 370; Sullivan v. Thurmond, 45 S. W. Rep., 393; Burnham v. Logan, 29 S. W. Rep., 1069; Sonnentheil v. Trust Co., 10 Texas Civ. App., 274.

In this case the appellants, upon whom the burden rested, failed to prove that the four accepting creditors in this case had notice of the unlawful intent of the grantors, if in fact such intent existed; but they insist that the fact that H. C. Odle, one of the trustees, indirectly, through Estes, bought the property at the trustee's sale, under the circumstances of this case, would render the sale void and entitle them to recover the property. This proposition is not sound, because the appellants claim title, not under the mortgage, but adversely thereto, and while such conduct on the part of the trustee, unless perfectly fair and just to the accepting creditors, would be sufficient, upon proper proceedings, to set aside the sale and compel a just and fair execution of the trust, yet, as the creditor under whom appellants claim title, though named in the deed of trust as a beneficiary, repudiated the mortgage and refused to accept it, but seized the property under an execution and claims title independent of the trust deed, the appellants have no right whatever to complain of the manner in which the trust was executed by the trustees. If the trustees had swallowed up the whole thing, and had been ever so guilty of fraud in the execution of the trust, the appellant's rights and title under their execution sale could in no manner be affected thereby. They must recover upon the strength of their own title; in other words, they must establish title in themselves prior or superior to the one conveyed to the trustees; and unless they show invalidity in the mortgage conveyance they can not recover. They have no concern and can have no interest in what becomes of the property

afterwards. 1 Perry on Trusts, 4 ed., sec. 602w; Edmonson v. Walsh, 27 Ala., 578; Bohn v. Davis, 75 Texas, 24; Marsh v. Hubbard, 50 Texas, 203; 27 Am. and Eng. Enc. of Law, pp. 202, 205, 206, and cases there cited; Hammond v. Hopkins, 143 U. S., 224.

It is furthermore settled, it seems, that where the property conveyed in the mortgage is of less value than the amount of the debts secured thereby, an attaching or execution creditor can not complain of any provision in the deed which would merely tend to delay or hinder unsecured creditors in collecting their debts, if the debts secured are just and true—not simulated or fictitious—and the creditors secured, of course, are innocent of any fraud. This, it is said, grows out of the well settled doctrine that an insolvent debtor may mortgage or sell his property in good faith to pay honest debts, and prefer one creditor over another, provided he convey no more property than is reasonably sufficient to pay the debts. Bank v. Marshall, 23 S. W. Rep., 246, 22 S. W. Rep., 6; Rainwater v. Weaver, 4 Texas Civ. App., 594. Now, in this case the evidence showed that the property conveyed by the mortgage was worth $2000 or $2500, while the partnership debts to secure which it was given alone amounted to over $2400.

There are no other questions of material importance presented by the record, and finding no material error therein, the judgment is affirmed.

<em>Affirmed.</em>