CRAWFORD v. EL PASO LAND IMPROVEMENT CO. (No. 791.)

(Court of Civil Appeals of Texas. El Paso. Feb. 14, 1918. On Rehearing, Feb. 28, 1918.)

1. TRUSTS ⊛189 — POWERS OF TRUSTEE — SALE.

Trustees cannot sell the trust estate without the express or implied authority conferred upon them by the instrument creating the trust.

2. TRUSTS ⊛193—POWERS OF TRUSTEE—SPECIFIC PERFORMANCE.

If a trustee is empowered by the instrument creating the trust to sell the estate, he may be compelled to specifically perform his contract to sell.

3. TRUSTS ⊛191(1)—POWER TO SELL—FORM OF POWER.

No particular form of words is necessary to create a power of sale in the trustee, but it is

essential only that the intent to create the power appear.

**4. TRUSTS &⟜191(2)—POWER TO SELL—FORM OF POWER.**

Deed granting lands to plaintiff as trustee, the habendum clause of which was to the trustee, his successors, or assigns, and granting other rights to the trustee and those for whom he holds title, "and his or their assigns," created a power in the trustee to sell.

**5. DEEDS &⟜94 — MERGER OF CONTRACT — WHEN APPLICABLE—FRAUD.**

Where plaintiff contracted to sell defendant "the Angelus Hotel," he was bound to convey the land upon which the building was situate, and the tender and delivery of a deed describing the land by field notes, which failed to embrace all of the land occupied by the hotel, and acceptance of such deed by the grantee in ignorance of such fact was a fraud, which prevented the application of the doctrine of merger.

**6. CONTRACTS &⟜147(1)—CONSTRUCTION.**

To ascertain the intention of the parties, the contract alone is to be considered in the absence of fraud, accident, or mistake.

**7. VENDOR AND PURCHASER &⟜65—CONSTRUCTION OF CONTRACT — LAND — "CONVEY HOTEL."**

A contract to convey a hotel plainly means to convey the land upon which the hotel is situated.

**8. EVIDENCE &⟜400(2)—ADMISSIBILITY—PAROL EVIDENCE VARYING WRITINGS.**

In the absence of fraud, accident, or mistake, parol evidence is not admissible to show that it was intended to convey less than the contract called for.

**9. TRIAL &⟜256(1)—REQUEST FOR AMPLIFICATION OF CHARGE.**

Omissions in the charge cannot be complained of in the absence of request for amplification.

**10. PLEADING &⟜8(15)—CONCLUSION—FRAUD.**

Allegation stating the conclusion of fraud, but failing to state any facts constituting the fraud, was insufficient, and an exception thereto should have been sustained.

**11. EVIDENCE &⟜471(1) — CONCLUSIONS OF WITNESSES.**

The conclusions of the witness should be excluded.

*On Rehearing.*

**12. APPEAL AND ERROR &⟜736—ASSIGNMENTS OF ERROR—SUFFICIENCY.**

In view of Rev. St. 1911, art. 1612, as amended by Acts 33d Leg. c. 136 (Vernon's Sayles' Ann. Civ. St. 1914, art. 1612), making an assignment of error sufficient if it directs the attention of the court to the error complained of, an assignment, though multifarious, which does so direct the attention of the court to the error, is sufficient.

**13. APPEAL AND ERROR &⟜766—BRIEF—COMPLIANCE WITH RULES.**

The Court of Civil Appeals now considers all questions upon their merits in the absence of disregard of statutory provisions or flagrant or inexcusable disregard of the rules of briefing.

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Suit by L. M. Crawford, trustee, against the El Paso Land Improvement Company, and cross-action by the Land Improvement Company against Crawford, as trustee. Judgment for defendant in the first action, and for plaintiff in the second, and Crawford, trustee, appeals. Reversed and remanded. Motion for rehearing overruled.

See, also, 192 S. W. 256.

Jones, Jones, Hardie & Grambling, of El Paso, for appellant. T. A. Falvey and J. F. Woodson, both of El Paso, for appellee.

HIGGINS, J. The Bailey Hotel Company, a corporation, was the owner of that portion of block 2 in the city of El Paso, according to the Mills Map, bounded on the east by Mesa avenue, on the south by Main street, on the west by an alley, and on the north by the right of way of the El Paso & Southwestern Railway Company. The property was in square form, and had a frontage of 120 feet on each side. The Angelus Hotel was situate on a part of this property. It was on the east portion thereof adjacent to Mesa avenue and extended from Main street to the north boundary line of the property. On February 26, 1906, said company conveyed to L. M. Crawford, trustee, that portion of the premises described as follows:

"Beginning at a point in the north margin of Main street where the east side of the public alley running through said block intersects said Main street; thence in a northerly direction along the east side of said alley one hundred and twenty (120' 0″) feet; thence at right angles easterly and parallel with Main street fifty-four feet and five inches (54' 5″); thence at right angles southerly and parallel with said alley and with Mesa avenue thirty-nine feet and one and one-half inches (39' 1½″); thence easterly and parallel with Main street twelve feet (12'); thence at right angles southerly and parallel with said alley and parallel with Mesa avenue thirty-nine feet and ten and one-half inches (39' 10½″); thence westerly and parallel with the north line of Main street nineteen feet and six inches (19' 6″); thence southerly and parallel with said alley and parallel with Mesa avenue forty-one feet (41' 0″); thence west on the north line of Main street forty-eight feet (48' 0″) to the place of beginning."

The stock of the Bailey Hotel Company was owned by L. M. Crawford, trustee, H. H. Bailey, and Hattie Bailey. On January 12, 1907, L. M. Crawford, for himself and as trustee, H. H. Bailey and Hattie Bailey, first parties, entered into a written contract with U. S. Stewart, second party, who was acting for himself and associates. In this contract it was recited that the first parties were the owners of the property known as the Angelus Hotel at Main street and Mesa avenue in the city of El Paso, and the owners of the capital stock of the Bailey Hotel Company holding said property, the improvements thereon and the personal property, furniture, and fixtures appurtenant thereto. The first parties agreed to sell to Stewart and his associates "the said Angelus Hotel and all of the capital stock of the Bailey Hotel Company" for $75,000 paid and to be paid. They agreed "to make, execute, and deliver all proper necessary deeds of conveyance, warranty in form, to the parties of the second part, or their assigns," and to also transfer and deliver to the parties of the second part all of the capital stock of the Bailey Hotel Company. The El Paso Land

&⟜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Improvement Company, appellee, was organized by the second parties to this contract and succeeded to Stewart's rights thereunder.

Pursuant to resolutions of its stockholders and board of directors, the Bailey Hotel Company, by deed dated January 29, 1907, conveyed to appellee that portion of block 2, described as follows:

"Beginning at a point where the west line of Mesa avenue intersects the north line of Main street; thence in a northerly direction along the west line of Mesa avenue one hundred and twenty (120') feet; thence at right angles in a westerly direction and parallel with Main street sixty-five feet seven inches (65' 7"); thence at right angles in a southerly direction thirty-nine feet one and one-half inches (39' 1½"); thence at right angles in an easterly direction thirteen feet one inch (13' 1"); thence at right angles in a southerly direction thirty-nine feet ten and one-half inches (39' 10½"); thence at right angles in a westerly direction and parallel with Main street nineteen feet six inches (19' 6"); thence at right angles and in a southerly direction and parallel with Mesa avenue, forty-one feet (41') to the north line of Main street; thence at right angles in an easterly direction and along the north line of Main street seventy-two (72') feet to the west line of Mesa avenue and the point of beginning."

Appellee has paid the consideration of $75,000 as agreed. This deed was executed in fulfillment of the contract of January 12th. After Crawford, trustee, acquired the western part of the block and prior to the contract made with Stewart, he erected upon the property acquired by him a building known as the Crawford Theater. It appears that the lobby and stage (ground) floor of this building covers all of the premises conveyed to Crawford by the hotel company. As a matter of fact the west wall of the Angelus Hotel, from a point some distance west of the interior northeast corner of the Crawford tract to the north line thereof, was situate on the Crawford tract. This wall is on the line "I" shown upon the plat below. In building the theater, Crawford removed the lower part of this wall and supported the upper portion thereof with iron posts, one located at the north end of the wall and one west of said interior northeast corner. This left certain rooms and closets of the Angelus Hotel on its second, third, and fourth floors overhanging the stage and dressing rooms of the Crawford Theater. As a matter of fact a balcony of the Angelus Hotel also overhung the Crawford property. This balcony was about 7 feet wide and extended from the lower northeast corner of the Crawford tract to the upper southeast corner of said tract. This suit was brought by L. M. Crawford, trustee, against the El Paso Improvement Company to compel the latter: First, to remove said rooms, closets, and balcony which extend over the theater building owned and operated by plaintiff; and, second, to enjoin and restrain the defendant from interfering with an easement in and through the Angelus Hotel building. By cross-action the improvement company set up the contract of January 12, 1907, and that the first parties therein had failed to convey a part of the premises which they had agreed to convey, described as follows:

"Beginning on the north line of the property conveyed to it by the Bailey Hotel Company at a point 65 feet 7 inches west of the west line of Mesa avenue; thence at right angles in a southerly direction 39 feet 1½ inches; thence at right angles in an easterly direction 13 feet 1 inch; thence at right angles in a southerly direction 39 feet 10½"; thence at right angles in a westerly direction and parallel with Main street, 19 feet 6 inches; thence at right angles northerly to the north line of the real estate described under paragraph 2 hereof; thence at right angles easterly along said north line of the real estate described under paragraph 2 hereof, 6 feet 5 inches."

The overhanging rooms, closets, and balcony complained of by Crawford are situate upon the premises last described. The plat following is explanatory of the situation on the ground:

The improvement company prayed that title to said premises be divested out of Crawford and vested in it. The theory of the cross-action was that the contract of January 12th obligated Crawford and the Baileys to convey all of the land upon which the Angelus Hotel was situate; that the overhanging rooms and balcony complained of by Crawford was a part of the hotel building and covered the premises last described, and since the description contained in the deed to the improvement company did not embrace all of the land covered by the Angelus Hotel, it was therefore entitled to recover the land sued for in its cross-action.

The case was submitted to a jury upon special issues. These issues and answers are as follows:

"No. 1. What part of the 72 feet of block 2, Mills Map, did the Angelus Hotel cover on the 12th day of January, 1907? You may answer this question by saying all, or (2) that part described in the deed from Bailey Hotel Company to El Paso Land Improvement Company, or (3) in any other way you may find from

the evidence the same should be answered. Answer: All.

"No. 2. Do you find that both the sellers and purchasers, in said contract named, believed and understood at the time of the contract of date January 12, 1907, that no part of the land theretofore conveyed by the Bailey Hotel Company to L. M. Crawford, trustee, was a part of the Angelus Hotel? Answer: No.

"No. 3. What would be the difference, if any, between the annual rental value of the Crawford Theater building, as it is and as it would be, without the rooms and construction complained of? Give your answer in dollars. Answer: $575.

"Plaintiff's Special Issue No. H. Do you find from the evidence that at the date of the execution of the contract of sale of January 12, 1907, L. M. Crawford, trustee, held the property described in the deed from the Bailey Hotel Company to L. M. Crawford, trustee, only as trustee, for the Amusement Syndicate Company? Answer: No.

"Plaintiff's Special Issue No. I. If you have answered plaintiff's special issue No. H in the affirmative, then, but not otherwise, answer this question: Do you find from the evidence that at the time of the execution of said contract of said L. M. Crawford, trustee, had no authority from the Amusement Syndicate Company to execute said contract of sale for the Amusement Syndicate Company? Answer: ——."

Upon these findings judgment was rendered in favor of the improvement company for the land described in its cross-action, subject, however, to an easement in favor of Crawford, for himself, his agents, servants, and employés and the patrons of the Crawford Theater on the first floor of the Angelus Hotel extending from Mesa avenue back to the theater. The premises so incumbered by this easement are 18 feet 7 inches wide. This is the same easement granted Crawford, trustee, as a place of approach and exit, 18 feet 7 inches wide from Mesa avenue, through the Angelus Hotel contained in the deed from the Bailey Hotel Company to Crawford, trustee, dated February 26, 1906, hereinafter quoted at some length.

The question which logically arises first relates to the authority of Crawford to contract to convey, for it is obvious that if he was without authority to make the contract of January 12, 1907, the improvement company has no right to recover the premises for which it sued, for the courts will not compel a trustee to specifically perform a contract to convey which he was without authority to make. The deed from Bailey Hotel Company to Crawford dated February 26, 1906, recites a consideration of $30,000 paid and to be paid by L. M. Crawford, trustee. The premises were granted, sold, and conveyed to L. M. Crawford, trustee. The habendum clause was unto L. M. Crawford, trustee, his successors or assigns forever. The warranty was to Crawford, trustee, his successors or assigns. The deed contains these further provisions:

"As part of the consideration of this deed it is hereby agreed and understood between the said Bailey Hotel Company and the said Crawford, trustee, that the said Crawford, trustee, and his assigns, are to perpetually have the joint use and control, with the Bailey Hotel Company, as a place of approach and exit to said property hereinbefore described, the same being intended for use as an opera house or other place of public amusement, an entrance eighteen feet and seven inches (18' 7'') wide, reaching from Mesa avenue through the Angelus Hotel to the said property above described, and the same is to be throughout the width of eighteen feet and seven inches (18' 7''), and the said Crawford, trustee, and his assigns, and the persons for whom he is trustee, shall at all times have the use of said entrance way and the full width and height thereof, as per map or plat hereto attached and made a part hereof, with the right of ingress and egress from the said Mesa avenue and the sidewalk and approach thereto for said purposes. And the said space and the title thereto for said purposes is to be included and form a part of the conveyance herein expressed, and is a part of the properties, rights, and benefits herein conveyed. It is also agreed and understood, as a part of said consideration, that the said Crawford, trustee, and his assigns, and those for whom he holds title, is to have the right and easement, for all time, in the joint use of any wall or walls of what is known as the Angelus Hotel, or any part thereof which will be adjacent to the lines hereinbefore drawn of the properties which upon the map which is attached hereto and made a part hereof is marked 'Crawford,' and all of said lines of said plat is here referred to and is to form a part of this deed and contract, and it is agreed and understood that the party or corporation using said wall or walls or any part of same is to pay the pro rata value of the reasonable cost of said wall or walls at the time of and the extent to which same are taken and appropriated. And it is further agreed and understood that either the Bailey Hotel Company or its successors or assigns, and the said Crawford and those for whom he holds title, and his or their assigns, shall have the right at any time to increase the height of any of said walls at their own and proper cost and expense, but should either of said parties or any of them, or their assigns, afterwards desire to use and exercise the right to use said wall or walls so increased in height, or length, that then and in that event the parties so afterwards using said wall or portion of same shall pay or cause to be paid a pro rata value of the same, and neither party shall be required to give over possession or the right to use the said wall or walls until after compensation has been made therefor, or suitable arrangements entered into for the use of said wall or walls. And it is understood and agreed that a tender of the reasonable value of the said wall or walls so appropriated and joined onto shall permit the party so desiring the use of same to proceed with the connection or building adjacent thereto, and should there be any difference between the offer and the value of same according to the ideas of the parties making the claims for compensation, the same shall be adjusted afterwards. It is further agreed and understood that either party, their successors or assigns, mentioned herein, shall not be required to pay more than one-half of the value of any existing wall at the time same is taken and appropriated, and that neither party is to have exclusive use of any such joint wall, but only the right to use and enjoy the same as a partition or division wall between the respective properties shown by said map or plat."

[1-3] This deed does not disclose the nature of Crawford's trust, nor the beneficiary thereof. Upon the trial he testified that he held the same in trust for the Tri-State Amusement Company, but he did not undertake to state, nor is there any evidence to show, the

nature and purposes of the trust. In this particular the record is silent. Whether or not Crawford had authority to sell depends upon the nature of the estate and title which he acquired by above-mentioned deed. Trustees may not sell the trust estate without express or implied authority conferred upon them by the trust instrument. But if they have such authority they are competent to contract to sell, and the courts will compel them to specifically perform. 2 Perry on Trusts (6th Ed.) §§ 764–787. No particular form of words is necessary to create a power of sale. Any form which shows an intention to create such power will necessarily confer the same upon the trustee. So any form of words from which a power to convey can be inferred will authorize a sale. 2 Perry on Trusts, § 766; 39 Cyc. 351. Our courts hold that the power of an independent executor to sell may be implied. Terrell v. McCown, 91 Tex. 254, 43 S. W. 2.

[4] In the deed to Crawford the habendum clause is to Crawford, trustee, his successors or assigns, but this is not the most significant portion indicating an intention to vest in him the power to convey. In the quoted portion of the deed it will be noted that Crawford, trustee, and the persons for whom he was trustee, and his assigns, are granted joint use and control of the Mesa avenue entrance; that he and his assigns and those for whom he held title were granted certain party wall rights in the walls of the Angelus Hotel; "and Crawford and those for whom he holds title *and his or their assigns*" (italics ours) were granted the right to increase the height of the walls. There are other references than those noted to the rights and obligations of Crawford's assigns. These all clearly show an intention to create power in the trustee to sell and necessarily confers such power. 2 Perry on Trusts, §§ 764–766; Olcott v. Gabert, 86 Tex. 121, 23 S. W. 985. The provisions of Crawford's deed much more strongly tend to show that it was contemplated he should have power to sell than in Olcott v. Gabert. It was there held that the use of the word "assigns" in the habendum indicated that it was contemplated that the trustee should have such power. This case is regarded as decisive in favor of the holding that Crawford took under the deed a fee-simple title for an undisclosed beneficiary, and was vested with a power of sale under the very terms of the deed to him. See, also, Kanenbley v. Volkenberg, 70 App. Div. 97, 75 N. Y. Supp. 8; Title Co. v. Falkon, 101 App. Div. 187, 91 N. Y. Supp. 497.

[5] The next question logically arising is presented by appellant's contention that the contract of sale was merged in the deed to appellee because it was accepted by it as a compliance with the contract. Numerous authorities are presented in support of the well-settled doctrine that when a deed is delivered and accepted as a performance of a contract to convey, the contract is merged in the deed. But this doctrine is subject to the qualification that there is no merger where the grantees by fraud or mistake have been led to accept something different from what the contract calls for. Griswold v. Eastman, 51 Minn. 189, 53 N. W. 543; Slocum v. Bracy, 55 Minn. 249, 56 N. W. 826, 43 Am. St. Rep. 500; Burk v. Brown, 58 Ind. App. 410, 108 N. E. 255.

The undisputed facts show that the contract was to convey the Angelus Hotel. This bound the obligors to convey the land upon which the hotel building was situate. 2 Devlin on Deeds (3d Ed.) §§ 1200, 1201; Wade v. Odle, 21 Tex. Civ. App. 656, 54 S. W. 786; Town of Rolling v. Wunderlich, 138 Wis. 667, 120 N. W. 515. The deed from the Bailey Hotel Company, tendered in compliance with this contract, described the land by field notes which in fact did not embrace all of the land upon which the building was situate. The grantees accepted the deed ignorant of the fact that the description therein contained did not include all of such land. It is true the representative of and attorney for appellee prepared the deed, but in doing so he used field notes furnished by the obligors in the contract, and he supposed that such description covered all of the land upon which the hotel was situate. The tender and delivery of this deed, describing the land by field notes, which did not embrace all the land upon which the hotel was situate, and its acceptance by the grantee in ignorance of such fact, was a fraud upon it, and prevents the application of the doctrine of merger. Finks v. Hollis, 38 Tex. Civ. App. 23, 85 S. W. 463.

[6] Appellant presents the proposition that equity will not enforce specific performance of a contract in such manner as is manifestly contrary to the intention and understanding of all the parties at the time of its execution. This contention is based upon the premise that it was not contemplated by any of the parties at the time the contract was made that Crawford, trustee, was to be compelled to convey any land held by him as trustee. To this it may be replied that the contract is plain and unambiguous. It bound the obligors to convey the Angelus Hotel, and to ascertain the intention of the parties the contract alone is to be considered, in the absence of fraud, accident, or mistake, in the making thereof. There is no contention that there was any accident or fraud practiced by the obligees. So far as mistake is concerned, it is undisputed that the obligees understood that they were contracting for the entire Angelus Hotel. They were shown these very overhanging rooms as being a part thereof. It is true they may have been under the impression that in conveying the Angelus Hotel Crawford would not be required to convey any land that he held as trustee, but this was a mistake upon their part as to a mat-

ter minor and distinct from the object and purposes of the contract which they entered into. What they were contracting for and what they understood they were to get was the Angelus Hotel. They were not contracting with reference to where the title thereto was vested, and were not concerned therewith. Furthermore, the jury in response to the second issue has made a finding adverse to appellant upon this phase of the case. If it was not Crawford's understanding that he would be required by the contract to convey title to any of the land held by him as trustee he can only do so by showing fraud, accident, or mistake, for to comply with the written contract which he made he would have to convey a part of the land so held by him.

[7, 8] The fourth proposition under the first assignment is abstractly correct, but its application here is not apparent. The contract was to convey the Angelus Hotel, and that plainly means the land upon which it is situate. Parol evidence in the absence of fraud, accident, or mistake would not be admissible to show that anything less than that was intended to be conveyed.

The fifth proposition is predicated upon an assumption of mutual mistake in the making of the contract. The finding of the jury in response to the second issue as well as the undisputed evidence shows that the obligees in the contract made no mistake as to what they were to get. They understood that they were to buy the Angelus Hotel, and this is what the contract calls for.

It is objected that the finding in response to question 1 that all of the east 72 feet of block 2 was covered by the Angelus Hotel on January 12, 1907, is unsupported by the evidence. This is well taken. There is no evidence to show that the Angelus Hotel is situate upon, or that any part thereof overhangs, that portion of appellant's land described as follows: A space about 39 feet by 12½ feet lying west of and adjacent to the wall of white brick shown on the map prepared by appellee's witness Owen on February 7, 1917. This space is between the line "X" on above copied plat and the west line of the balcony. The balcony extends 7 feet west from the line "E" on above plat. There is evidence to show that on January 12, 1907, most, if not all, of the balance of the lands in controversy was covered by projections of the Angelus Hotel. In view of a retrial we refrain from commenting upon the evidence further than to say that all parts of the Angelus Hotel which on the date of the contract projected over and rested upon appellant's land would be embraced within the provision of the contract, and that it requires the conveyance of the land upon which such projections were situate.

Appellant upon the trial objected to question 1 upon the ground that it authorized a finding that all of the east 72 feet of block 2 was covered by the Hotel, when the undisputed evidence showed that at least a part thereof was not covered. As is pointed out above, this is the state of the evidence, and the objection urged should have been sustained.

It is contended that the answer to question 8 is contrary to the undisputed evidence that Crawford held the premises in controversy in trust for the Tri-State Amusement Company. Under the ruling that Crawford acquired by his title an estate and title which he had power to sell it makes no difference whether he did or did not so hold in trust.

Under rulings heretofore indicated the questions presented by the eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, and eighteenth assignments require no comment.

[9] The nineteenth assignment complains of omissions in the charge. If appellant desired the charge amplified in these particulars, he should have prepared and requested charges and issues to cover such omissions.

The twentieth complains of the refusal of a special charge defining a contract. There was no issue presented by the record to require such a definition.

[10] The twenty-first complains of the overruling of a special exception to the allegation of fraud contained in appellee's cross-action. The allegation fails to state any facts showing fraud upon Crawford's part. It is simply a general allegation. The exception should have been sustained. Parker v. Allen, 33 Tex. Civ. App. 206, 76 S. W. 78; Baker v. Rust, 37 Tex. 243.

[11] The testimony of the witness Payne, admission of which is complained of in the twenty-third assignment, is a conclusion, and should have been excluded. In the state of the record, the error in this particular is not reversible, but attention is called thereto in order that it may be avoided upon retrial.

The various other assignments and supporting propositions which have not been specifically mentioned herein have all been considered, and are considered as presenting no error.

For the error indicated, the case is reversed and remanded.

### On Rehearing.

[12] Upon rehearing appellee asks that the judgment of the court below be reformed and affirmed as to that land which there was evidence to show was covered by the Angelus Hotel. It is unnecessary to determine whether or not it would be permissible to so do for the reason that, in any event, the cause must be reversed for the error of the court in overruling the special exception made the basis of the twenty-first assignment of error. For the reason pointed out in our opinion, this assignment was sustained, but it is insisted that this court should not have considered the same because it is multifarious. Article 1612, R. S., as amended by chapter 136, Acts 33d Legislature, provides that an assignment shall be sufficient which directs the atten-

tion of the court to the error complained of. The twenty-first assignment complains of the overruling of appellants' third exception to the cross-action of the appellee, and in overruling various subdivisions of said exception. It may be that this assignment, strictly speaking, is multifarious, but it certainly directed the attention of the court to the error complained of, and, in view of the foregoing amendment, we doubt whether it is permissible to refuse consideration of an assignment simply upon the ground that it is multifarious. Kilgore v. Savage, 164 S. W. 1081. But, however this may be, the fact remains that this court did consider the same and sustained the subjoined proposition attacking the sufficiency of the allegation of fraud contained in the cross-action.

[13] The rules prescribed for briefing are not of such ironclad nature as to preclude the court from consideration, upon its merits, of any question presented upon appeal. As a matter of fact, if the courts confined themselves to a consideration only of assignments briefed in strict conformity with the rules, a very large proportion of assignments would be disposed of upon technical grounds rather than upon their merits. It has been the practice always for the courts, in their discretion, to consider an assignment which may not have been presented in strict conformity with the rules. Except for a short time subsequent to the first organization of this court, it has been the uniform practice of this court to do so, whether or not the rules of briefing have been strictly complied with in presenting the same. It has been found imperatively necessary so to do, otherwise appeals would be disposed of upon technical considerations rather than upon their merits. This court now considers all questions upon their merits, unless there has been a disregard of some statutory provision or a flagrant and inexcusable disregard of the rules of briefing. The objection urged to the consideration of the first assignment is technical, and we are not disposed to refuse consideration thereof upon that ground. We therefore adhere to our action in considering and sustaining the twenty-first assignment.

Overruled.

WALTHALL, J., did not sit, being absent on committee of judges assisting the Supreme Court.