# CHARLESTON.

DAY *et al. v.* ADKINS

(No. 6692)

Submitted May 7, 1930. Decided May 20, 1930.
(Rehearing Denied July 17, 1930.)

*J. Howard Hundley* and *T. C. Townsend,* for plaintiff in error.

*Thomas Coleman,* for defendants in error.

MAXWELL, JUDGE:

R. L. Adkins, defendant, prosecutes this writ of error to a judgment of the circuit court of Kanawha county rendered against him and in favor of Charles Day and Pearl Day, his wife, plaintiffs, on the verdict of a jury for $3,657.50, damages for the alleged breach of a contract. The evidence shows the following facts:

On February 27, 1928, plaintiffs, then infants, entered into a contract with defendant; the pertinent parts thereof being:

"First: Parties of the first part hereby agree to live with, keep house for and at all times to take good care of Mary J. Adkins, the mother of the party of the second part and Cora B. Adkins his sister as long as the said Mary J. Adkins shall live, and to look after them and comfortably keep them and furnish them with all cooking, food and such necessaries of life except clothing and doctor's bills."

"Third: Parties of the first part shall have the right to collect and receive all rents from that certain four room cottage adjacent to the property of H. P. Williams on Oakwood Drive but the parties of the first part are to pay all taxes, insurance and necessary repairs on said cottage.

"Fourth: Provided the parties of the first part carry out the terms of this agreement in full, the party of the second part agrees, as soon as possible after the death of Mary J. Adkins, to make, execute and deliver a deed with covenants of general warranty to parties of the first part, conveying to them the aforementioned four room cottage on Oakwood Drive near the present residence of H. P. Williams."

Plaintiff Pearl Day was the granddaughter of Mary J. Adkins and niece of Cora Adkins and R. L. Adkins, defendant. Mary J. Adkins was advanced in age, and Cora, her daughter, was mentally defective. The four-room cottage referred to occupies a space 28 by 30 feet in one corner of a lot approximately 162 by 165 feet located in the South Hills, just outside the city of Charleston. The lot is fenced in on two sides and is bordered on the south by Oakwood Drive and on the north by Ravine Drive. Plaintiffs contend that on three separate occasions defendant pointed out the boundaries of this lot to them—one of those times being the morning after the signing of the contract—and that he said to them that they would get both the cottage and the whole lot upon the fulfillment of their obligation. Defendant stoutly denies pointing out such boundaries.

Mary J. Adkins died December 18, 1928. The defendant then declined to make a deed to the plaintiffs for the property, and this action for damages followed. The issues of fact as to whether the plaintiffs properly discharged the obligations

of their contract, or whether they breached the same, the jury, by their verdict, resolved in favor of the plaintiffs.

We perceive no error in plaintiffs' instructions given, nor in defendant's instructions refused, assigned as error by the plaintiff in error. Other points assigned are collateral to the matter now to be considered. It concerns the extent of the property which was included in the contract; the determination thereof is essential to the measure of plaintiffs' recovery. If they are entitled to recover damages, the measure thereof will depend to a large extent upon whether the contract provided for the conveyance by deed of general warranty of only sufficient ground for the occupancy and reasonable enjoyment of the cottage, or whether by parol evidence it might be shown that the whole lot was intended. The trial court held that the contract was ambiguous as to the amount of ground included and admitted parol evidence to explain what was meant. To the admission of such evidence the defendant objected, insisting that the contract was free from ambiguity either latent or patent, and that the action of the court amounted to enlarging the contract. The query then is whether the contract in question was in fact ambiguous or uncertain in regard to the amount of ground contemplated. Defendant contends that the description "that certain four-room cottage adjacent to the property of H. P. Williams on Oakwood Drive," concerning the identity of which there is no dispute, by implication applies to only so much of the land as is necessary to the reasonable use of the building, and that such description is not susceptible of more than one interpretation; that it is a matter fixed by law; and that parol evidence tending to show that the parties agreed otherwise would in fact vary the written contract and would therefore be improper. Plaintiffs contend that they in no way seek to enlarge the description in the contract, but that a latent ambiguity exists, in that the ground which is to go with the building is not described at all, and that available evidence should be admitted to identify the ground which the parties in fact contemplated. Narrowed, the question is: Must the intent of the parties as to the ground to be conveyed with the cottage be determined from the words

of the contract itself? Do the words "that certain four-room cottage" imply without more the amount of land which is to go with the cottage or may there be parol evidence to establish that the parties meant otherwise?

Considering the question of a grant of a house or building, it is stated in Devlin on Real Estate (3d Ed.) vol. 2, at page 1619: "A grant of a house includes the land under it." At page 2252, the author says: "Courts have frequently decided that a conveyance of a building or barn used as a term of description will convey also the land upon which the building or structure may be erected. * * * But only so much of the land as is necessary to the use of the structure will pass by implication by a conveyance of the structure itself, and this rule applies also to an exception contained in a deed." In Corpus Juris, vol. 18, p. 296, it is said: "A conveyance of a building may operate to pass the land on which it stands, and may also pass land contiguous or incident thereto, necessary to the ordinary use and enjoyment of such building. * * * A conveyance of a building does not pass land which is not used in connection with the building, and is not necessary to its enjoyment." Many cases reiterate this principle. Judge Story, in *United States* v. *Appleton,* in 1 Sumn. at page 492, Fed. Cas. No. 14463, says: "The general rule of law is that when a house or store is conveyed by the owner thereof, everything then belonging to, and in use for, the house or store, as an incident or appurtenance, passes by the grant. * * * The law gives a reasonable intendment in all such cases to the grant; and passes with the property all those easements and privileges, which at the time belonged to it, and are in use as appurtenances." In the case of *Carleton* v. *Cleveland* (1914) 112 Me. 310, 92 A. 110, the rule is thus laid down: "The deed conveying a store to defendant described the building as 'the wooden frame building now on the west side of Maine street, adjoining the drug store of B. and formerly occupied by H. as a candy and variety store, together with the land on which it sits.' Held, that such deed did not pass to defendant title to the lot in the rear of the store on which an addition was erected; it having been at no time inclosed or used in con-

nection with the main store, nor necessary to its enjoyment.''
The subject is fully considered in Ann. Cas. 1914B, 1239. For
cases bearing directly on the subject and reiterating the prin-
ciple that only so much of the land passes under the grant as
is necessary for the reasonable enjoyment and use of the house
or building, see *Bacon* v. *Bowdoin* (1839) 22 Pick. (Mass.)
401; *Wade* v. *Odle* (1899) 21 Tex. Civ. App. 656, 54 S. W.
786; *Winchester* v. *Hees* (1857) 35 N. H. 43. In *Sanborn* v.
*Hoyt* (1844) 24 Me. 118, the court says: ''By the grant of a
messuage, house, mill, or store, the land, on which it stands,
may pass. And an exception in a deed may have the same con-
struction. In such cases the intention of the parties may
usually be ascertained from the language, considered in con-
nection with the state of facts at the time. Thus if one were
to grant his house or store, without explanatory words, sit-
uated upon a small lot used with it, the lot might well be con-
sidered as intended to be conveyed. And the grant of a dwell-
ing house upon a farm might convey a small lot of land, fenced
from the farm, or otherwise clearly designated and used
with the house. It is not always true, that there is a lot so
designated and used particularly in connection with the build-
ings standing upon a farm, or other considerable tract of land.
Such a designation would seem to be necessary, that some cer-
tain lot might be conveyed, to admit of a construction, that
land was intended to be conveyed by the conveyance of a
house.'' Likewise *Ansin* v. *Taylor* (1928) 252 Mass. 159, 159
N. E. 513; *Tadlock* v. *Mizell* (1928) 195 N. C. 473, 142 S. E.
713, quoting and approving *State* v. *Board of Education*, 71
W. Va. 52, 76 S. E. 127, Ann. Cas. 1914B, 1238, wherein JUDGE
BRANNON quotes from Devlin the statement second above set
out. See also *Himler Coal Co.* v. *Kirk*, (1924) 205 Ky. 666,
266 S. W. 355. Turning to the West Virginia cases on this
point, we find in *Hawkins* v. *Wilson*, 1 W. Va. 117, the state-
ment by JUDGE BROWN, ''I think we are fully warranted in
holding that, the words, 'a certain house and appurtenances,'
do import land within the meaning of the statute, to the extent
of the land on which the house stands and the garden attached
to it, but no further.'' In *Gilbert* v. *McCreary*, 87 W. Va. 56,

104 S. E. 273, 275, 12 A. L. R. 1172, JUDGE POFFENBARGER, reviewed the authorities in a well-considered opinion as follows: "The house is part of the property devised, and its designation in the will as 'No. 114 Tenth Street' constitutes an index or means by which it can be found and identified. A gift thereof, by such designation, carries with it whatever reasonably and necessarily belongs to it as a place of residence, including the ground on which it stands and such additional ground as has been defined as belonging to it, by use thereof in connection with it. There are some decisions literally importing that the grant of a house, mill, barn, or other structure carries only so much of the soil as it actually covers. *Crawfordsville* v. *Boots,* 76 Ind. 32; *Endsley* v. *State,* 76 Ind. 467; *Allen* v. *Scott,* 21 Pick. (Mass.) 25, 32. Am. Dec. 238. *Bacon* v. *Bowdoin,* 22 Pick. (Mass.) 401; *Johnson* v. *Rayner,* 6 Gray (Mass.) 111. It is here suggested that these cases may stop short of full definition of the grants, because it was unnecessary to determine their extent. It met the requirements of the cases to say the grants carried land. The English cases construing wills leave no doubt that a devise of a house carries all the land necessary to full use and enjoyment thereof. The contrary has never been so much as suggested. More than was really necessary or required for convenience has been held to have passed by such a devise. A devise of a house and garden carried stables, a yard, and a coal pen on the opposite side of the road from the house. *Clements* v. *Collins,* 2 T. R. 498. A devise of a life estate in a house carried certain lands used to produce hay and corn used on the premises. *Blackborn* v. *Edgley,* 1 P. W. 600. The word 'house' in an eminent domain act was held not to include a 6-acre field, lying across the road from a house and a considerable distance from it, though used in connection with the house for purposes not indispensable. In that case, however, Turner, L. J., said: 'Now, I take the law on the point to be that, by the description of a "house," what is necessary for the convenient occupation of the house will pass.' *Steele* v. *Midland R. Co.,* L. R. 1. Ch. App. Cas. 275.''

Under the principle evinced by the foregoing authorities,

if this were a suit specifically to enforce the contract, the amount of ground to which the plaintiffs would be entitled if they sustained their case would be limited to that which underlies the building and additional ground reasonably necessary for the use and enjoyment of the building, and parol evidence would be admissible only for the purpose of showing how much ground was reasonably necessary. So, in this action for damages the parol evidence as to the extent of the ground implied by the contract should be limited to showing the amount reasonably necessary for the use and enjoyment of the building. To admit parol evidence tending to show that the parties verbally agreed that a greater amount of ground would be conveyed than that which the contract clearly imported involves a violation of basic principles which forbid the varying of a written contract or the contradicting of the recognized legal import thereof by parol evidence. 1 Greenleaf on Ev. (15th Ed.) §§ 275, 277. In the latter section the law is thus concisely stated: ''And where the language of an instrument has a settled legal construction, parol evidence is not admissible to contradict that construction.''

In 10 Ruling Case Law, p. 1046, is this succinct statement: ''Whatever the law implies from a contract in writing is as much a part of the contract as that which is therein expressed, and if the contract, with what the law implies, is clear, definite, and complete, it cannot be added to, varied or contradicted by extrinsic evidence. The law conclusively presumes parties to a contract to understand its obligations, and evidence is not admissible to show their understanding to have been otherwise.''

Extensive citations are not necessary, but see 22 Corpus Juris, 1178; Jones, Commentaries on Evidence (2d Ed.) vol. 3, 2724 and vol. 4, 2816; Encyclopedia of Evidence, vol. 9, 349. The following are a few of the many cases reiterating this principle: *The Bark Delaware* v. *Oregon Iron Company,* 14 Wall. 579, 20. L. Ed. 779; *Standard Box Company* v. *Mutual Biscuit Company,* 10 Cal. App. 746, 103 P. 938; *Blake Company* v. *Jaeger,* 81 Mo. App. 239; *Fawkner* v. *Paper Company,*

88 Iowa, 169, 55 N. W. 200, 45 Am. St. Rep. 230; *La Farge* v. *Rickert,* 5 Wend. (N. Y.) 187, 21 Am. Dec. 209.

It follows that the judgment of the trial court must be reversed, the verdict of the jury set aside, and the case remanded for a new trial.

*Reversed and remanded.*