### F. P. OLCOTT v. M. GABERT.

No. 56.

**1. Construction of Deed—Fee Simple.**

A deed for certain town lots purported to be in consideration of $5, and granted the property to C. M. Dubois, bishop of Galveston, and his successors in office, for the use of the Roman Catholic Church. The habendum clause is as follows: " To have and to hold, all and singular, the premises above mentioned, unto the said C. M. Dubois, bishop of Galveston, for the use aforesaid, and to his successors and assigns forever." Under this deed the grantee took a fee simple title in trust for the benefit of the church. No conditions subsequent were expressed ......................................................... 124

**2. Conditions Implied.**

The mere declaration of the uses to which the granted premises are to be applied do not ordinarily import a condition...................... 125

### 3. Assigns.

The use of the word *assigns* in the habendum clause indicates that it was contemplated that the trustee should have the power to sell the lots, and thus to divert them to a purpose other than that primarily intended ...................................................................... 125

### 4. Mortgage and Foreclosure.

A purchaser at foreclosure sale of *all the lots* at a certain place *owned* by the mortgagor takes no title to lots sold by the mortgagor prior to the lien ................................................................... 125

### 5. Presumption of Regularity in Official Acts.

The presumption is that public officers do as the law and their duty require them (Lawson on Presumptions of Evidence, 53), and the same rule prevails as to the authority and acts of private officers. Ibid, 60. This obtains as to the official acts of the Roman Catholic clergy in managing trust property held by them.................................. 126

### 6. Coadjutor Bishop—Acts by Attorney.

A deed by Bishop Gallagher, attorney in fact for C. M. Dubois, bishop of Galveston, also as administrator bishop, will pass title to property held in trust by Bishop Dubois—at least the legal title ............... 126

### 7. Recitals as to Motives of Grantor as Affecting His Deed.

Bishop Dubois, by attorney Bishop Gallagher, by ordinary deed with special warranty, conveyed the lots in controversy to Olcott, who had bought at the foreclosure sale under subsequent mortgage. After the deed appears a recital that the motive was to restore the lots not used by the church to their owner, etc. *Held*, that this recital did not restore the property to the railway company, the grantor of Bishop Dubois, so as to enure to the benefit of a purchaser under execution against the railway company........................................ 127

### 8. Moral Duty.

There was no legal or equitable obligation upon Bishop Dubois to reconvey the lots to the railway company, as it had passed title by its deed. The effects of the railway company had been sold out. In discharging the moral obligation, as there was no legal or equitable one, the choice by him between the railway company and the purchaser at foreclosure sale could wrong no one. The deed did not accrue to the benefit of the railway company...... ............................... 127

ERROR to Court of Civil Appeals for First District, in an appeal from Grimes County.

*T. D. Cobbs*, for plaintiff in error.—Such property as did not pass to Olcott by his purchase was still in the hands of the receiver, and the sale of the same under the Thomas execution, pending the receivership, was a nullity, because the property was in the hands of a receiver of a court of competent jurisdiction. Railway v. Cox, 145 U. S., 601; Bank v. Calhoun, 102 U. S., 262.

That Olcott took the legal title to this property is beyond question, and under such title could recover the property, is to the mind of the writer equally as clear.

If he took the title only under the deed from Bishop Dubois, for the benefit of the Houston & Texas Central Railway Company, as the Court of Civil Appeals seemed to think, still then the same would be unadministered assets of the said railway company. As the proof shows this receivership still pending, the property under the law would be subject to his control and disposition under the orders of the court, and Olcott could still recover from a third party under his title, even though the beneficial interest would be for the railway or its creditors, to be administered in accordance with the rules of equity.

Admitting, for the sake of the argument (but which in fact is denied), that the deed to Olcott had the effect claimed by the Court of Civil Appeals, still then the legal deduction of the court is in the very teeth of our statute which provides for the disposition of unadministered assets of an insolvent corporation, and the property could not legally be sold under the Thomas execution.

*H. H. Boone*, for defendant in error.—Now, as in this case the plaintiff, Olcott, must recover, if at all, upon the strength of his own title, it must be determined what, if any, title he has to the property in controversy. If any, has he any more than a naked, dry trust, voluntarily assumed by himself? Was this property embraced in the decree of foreclosure or sale thereunder? Was it considered in that sale by the court decreeing the sale, by the sellers, or by the purchasers?

Appellant believes that he has acquired good title to this property; but whether he has or not is immaterial to the proper determination of this cause. Whether or not Bishop Gallagher acted under a mistake of the facts in surrendering the property, the fact remains, that acting under the information he had, his purpose was to restore the property to its true owner. Its true owner was not, and never had been, Olcott or the mortgagees under whom he claims. Nor does it matter, in the determination of this case, whether or not this property became administered assets of the Houston & Texas Central Railway Company which the receivers thereof could recover, or whether or not, upon the surrender of it by the Roman Catholic Church, it became subject to the lien of and execution sale upon the Thomas judgment.

The controlling question is, Did appellee Olcott have such title as entitled him to recover upon its own strength? If he did, then he should prevail. If he did not, as appellant insists, then the judgment of the Court of Civil Appeals should be affirmed.

GAINES, ASSOCIATE JUSTICE.—This suit was brought in the District Court of Grimes County, by the plaintiff in error, to recover of defendant in error and one Smith two certain lots in the city of Navasota. In the District Court, Smith entered a disclaimer, and the plaintiff obtained

a judgment against the other defendant. The latter having appealed, the Court of Civil Appeals reversed the judgment of the District Court and rendered a judgment in his favor.

Both parties claim title through the Houston & Texas Central Railway Company as the common source. On the 13th day of February, 1872, that corporation conveyed the lots in controversy to C. M. Dubois, bishop of Galveston, "for the benefit of the Roman Catholic Church."

On the 1st day of April, 1881, the Houston & Texas Central Railway Company executed to the Farmers Loan and Trust Company a mortgage upon its property to secure a certain bonded indebtedness. In the description of the property conveyed by this instrument was embraced, among other things, "all and singular, all town lots, acquired by gift, purchase, or otherwise, now owned or that may be hereafter owned on the line of railway now owned and operated by this company."

In 1885 a suit was instituted in the United States Circuit Court for the Eastern District of Texas to foreclose the mortgages upon the property of the railroad company, and receivers were appointed to take charge of the mortgaged effects. In that proceeding a decree of foreclosure was entered on the 4th day of May, 1888, and a sale was ordered. The sale was made in pursuance of the decree, and the plaintiff in error became the purchaser of the mortgaged property.

On January 18, 1889, a deed was made to him as such purchaser. On the 30th day of May, 1889, N. A. Gallagher, bishop of the Roman Catholic Church of Galveston, and as attorney in fact of C. M. Dubois, conveyed the lots to the plaintiff.

In 1890 the lots were levied upon and sold by the sheriff of Grimes County as the property of the Houston & Texas Central Railway Company by virtue of an execution issued against it, and at the sale they were purchased by defendant, to whom the officer executed his deed in due form.

The evidence shows, that although a building for church purposes was placed upon the lots, it was not accepted by the Catholic Church, and that the prospect of using the lots for the purposes of a church was entirely abandoned.

The first question arises upon the effect of the deed from the railway company to Bishop Dubois. That conveyance purports to be in consideration of the sum of $5, and grants the property to C. M. Dubois, bishop of Galveston, and his successors in office, for the use of the Roman Catholic Church. The habendum clause is as follows: "To have and to hold, all and singular, the premises above mentioned unto the said C. M. Dubois, bishop of Galveston, for the use aforesaid, and to his successors and assigns forever." We are of the opinion that the grantee took under the deed a fee simple title in trust for the benefit of the church whose officer he was. There are no conditions subsequent expressed, and although they

may be implied, they are not favored in law. It may be that the consideration expressed should be deemed nominal and that the conveyance should be treated as voluntary. And it is true that a condition will be more readily implied in a deed of that character than in one which rests upon a valuable consideration. Yet the rule is well recognized, that the mere declaration of the uses to which the granted premises are to be applied do not ordinarily import a condition.

When the declared purpose for which the property shall be used is a matter that will enure to the special benefit of the grantor, the courts are more inclined to treat the conveyance as conditional, than when, as in this case, the use is for the benefit of a special class of persons or of the public at large. In this case it does not appear that the maintenance of a church upon the lots was a matter specially advantageous to the railway company, who made the grant. Upon these propositions the authorities are numerous and in substantial accord. They are ably reviewed in Farnham v. Thompson, 34 Minnnesota, 331, a case directly in point, and in a note to the report of the same case in 57 American Reports, on page 63. There the words " for the purpose of erecting a church thereon only " followed the description of the property in the deed. Notwithstanding the word " only " excluded the idea that the property could be used for any other purpose, it was held not to create a condition. In the deed before us, the use of the word " assigns " in the habendum indicates that it was contemplated that the trustee should have power to sell the lots, and thus to divert them to a purpose other than that primarily intended

The Houston & Texas Central Railway Company having conveyed its entire interest in the lots, it follows that the mortgage upon its property subsequently executed, and the sale of all of its assets in pursuance of a decree foreclosing such mortgages, did not in any manner affect the title. Consequently the plaintiff in error acquired no right to the property in controversy by reason of his purchase at that sale. Whether he have such title as enables him to maintain this action depends upon the validity and effect of the deed from Dubois, by attorney in fact, to him.

In Blanc v. Alsbury, 63 Texas, 490, a similar deed, executed by Bishop Dubois, came up for consideration, and it was held that he had power to execute the conveyance. In that case, however, the lots had been conveyed to him " for the purpose of erecting thereon a Roman Catholic Church, * * * or to be exchanged for or used in the purchase of other property * * * for said purpose." The lots were conveyed in settlement of the balance of the debt for erecting a church edifice on other property. In this case the conveyance of the bishop seems to recognize that the purpose of the deed to him could not be carried out, and to be intended to convey the property to the person who, in the opinion of the grantor, was entitled to its use. The cases are not parallel. Yet in the case last cited it is said: " It is a matter of histor-

ical and common knowledge, that the form of government in the Roman Catholic Church is an episcopacy, in which the diocesan bishops possess enlarged powers respecting the temporal as well as the spiritual affairs of the church in their respective dioceses."

But whatever the powers of the incumbents of the sees of the Roman Catholic Church may be—a question upon which we have no direct evidence—we are of the opinion that it should not be lightly assumed that the bishop, in conveying the lots to the plaintiff in error, acted without authority. "The presumption is, that public officers do as the law and their duty require them" (Lawson on Presumptive Evidence, 53); and the same rule prevails as to the authority and acts of private officers. Id., 60; Bank v. Dandridge, 12 Wheat., 64.

The members of the Roman Catholic communion are found in every part of the Christian world, and their interests, temporal and spiritual, are looked after by a well disciplined hierarchy, consisting of functionaries of successive grades, whose respective powers are accurately defined, and among themselves well understood. In such a case, in the absence of proof to the contrary, the presumption that everything has been rightfully done ought to apply with peculiar force. We therefore conclude that the bishop, Dubois, was authorized to make the deed to the plaintiff through which he claims title to the lots in controversy. Being invested with the legal title, he could convey through an attorney; and it may be that without such authority, Gallagher, as coadjutor bishop, had the power to make the conveyance. A coadjutor bishop is one who is appointed to perform the functions of a regular bishop who is old and infirm. See word in Century Dic. In the deed Gallagher is also styled administrator bishop, and we think it is to be inferred that he was charged as the coadjutor of Dubois with the administration of the affairs of the see.

Bishop Dubois held the legal title to the lots in trust, and it was at all events competent for him to convey the title by attorney. Telford v. Barring, Greene (Iowa), 591; May's Heirs v. Frazee, 4 Litt., 391; Blight v. Schink, 10 Barr, 285. The plaintiff therefore took the legal title under the conveyance; and if it should be held that the equitable title did not pass by the deed, still it is his right to recover against the defendant in this suit, unless the latter has connected himself with the outstanding equity.

So far we are in accord with the Court of Civil Appeals, and our conclusions are strengthened by their opinion. But in their final conclusion, that by virtue of the deed from Dubois, the plaintiff in error took the legal title in trust for the benefit of the Houston & Texas Central Railway Company, we can not concur. That deed is an ordinary deed, conveying the fee simple title. But after a clause of special warranty, it contains the following recital: "The consideration of said conveyance is,

that heretofore the Houston & Texas Central Railway Company aforesaid, a corporation organized under the laws of the State of Texas, did convey said property to Rt. Rev. C. M. Dubois, bishop of Galveston, and his successors, for church purposes, that is to say, for the benefit of the Roman Catholic Church; and whereas, said property never having been used for the purpose for which it was donated, nor is there any purpose to so use the same, nor is there any hope to do so in the near future, this conveyance is made to restore said property to its rightful owner, and to cancel said conveyance so made by it to the said Rt. Rev. C. M. Dubois, bishop of the Roman Catholic Church aforesaid.''

Now while this recital shows the motive which prompted the conveyance, it does not operate to destroy what would otherwise be the effect of the deed.   As we have seen, after the Houston & Texas Central Railway Company made its conveyance to Dubois it had no title to the property, and no claim upon it which possessed any of the attributes of a legal or equitable demand. There was no legal obligation resting upon the authorities of the Catholic Church to reconvey the lots to any one. Whatever duty in the premises was incumbent upon them was purely of a moral nature.

When the bishop undertook '' to restore the property to its rightful owner,'' the effects of the railway company had been sold under a decree of a court, and the plaintiff in error had become the purchaser.   It was a ''sold out'' corporation.·  In order to discharge the duty which conscience dictated, it became necessary, under the circumstances, for him to determine whether the lots should rightfully belong to the original corporation, his grantor, or to the purchaser of its assets under the foreclosure.   This was not a legal question, because there was no legal right involved; and however it may have been determined, or to whomsoever the conveyance may have been made, neither party could have been injured, and neither could have had any right in law to complain.

Therefore we fail to see upon what principle it can be held that Alcott, by his deed from Dubois, took the legal title in trust for the railway company.   A luminous text writer, in classifying trusts, uses the following language:  '' Trusts are divided in reference to their creation into express trusts, implied trusts, resulting trusts, and constructive trusts.   Express trusts are also called direct trusts.   They are generally created by instruments that point out directly and expressly the property, persons, and purposes of the trust; hence they are called direct trusts, in contradistinction to those trusts that are implied, presumed, or construed by law to arise out of the transactions of the parties.   *   *   *   Implied trusts are trusts that the courts imply from the words of an instrument, when no express trust is declared, but such words are used that the court infers or implies that it was the purpose or intention of the parties to create a trust.   Resulting trusts are trusts that the courts presume to arise out

of the transactions of parties; as if one man pays the purchase money of an estate and the deed is taken in the name of another, courts presume that a trust is intended for the person who pays the money. A constructive trust is one that arises when a person clothed with some fiduciary character, by fraud or otherwise, gains some advantage to himself. Courts construe this to be an advantage for the cestui que trust, or a constructive trust.'' 1 Perry on Trusts, sec. 24, et seq.

There is no direct trust declared in the deed. There can be no resulting trust, because nothing of value was paid for the conveyance. The plaintiff can not be held a constructive trustee, because the railroad company had no legal or equitable claim upon the property to be injuriously affected by the transaction. Nor are there any words in the conveyance from which it is to be inferred that it was the intention of the grantor to create a trust. The meaning of the recital in the instrument in reference to the consideration received, in connection with the granting clause, is that the grantor conveyed the property to the grantee because he was the rightful owner. It does not mean that it was conveyed in trust for the rightful owner; and although the recital expresses the purpose to be to restore the granted premises to the rightful owner, and to cancel the original conveyance, it is quite clear that it was not intended that the railroad company should take the beneficial interest in the property.

For the reasons given, we are of opinion that the judgment of the Court of Civil Appeals ought to be reversed, and the judgment of the District Court affirmed, and it is so ordered.

Delivered November 16, 1893.