## HARRIS v. GOODLOE et al.
### No. 1052.

Court of Civil Appeals of Texas. Eastland.
Feb. 24, 1933.

Rehearing Denied March 31, 1933.

F. L. Kuykendall, of Albany, and Roy Creighton and W. H. Penix, both of Mineral Wells, for appellant.

Dallas Scarborough, of Abilene, for appellees.

FUNDERBURK, Justice.

A. S. Goodloe and J. D. Meredith sued Jodie P. Harris and the Texas Company for partition of an oil and gas lease on the southeast ¼ of section 57, East Texas Railway Company survey in Shackelford county. It was alleged that plaintiffs owned 8/16ths, Jodie P. Harris 7/16ths, and the Texas Company 1/16th undivided interest in the lease, the latter being an overriding royalty. It was alleged that there was a producing well on the lease needing immediate attention; that defendant Harris had failed and refused to attend to it and refused to permit plaintiffs to do so; that the primary term of the lease had expired, by reason whereof the lease could only be held by producing therefrom and Harris was interfering with the necessary operations, to plaintiffs' irreparable injury, for which they had no adequate remedy, "and therefore the property should be partitioned and divided 7/16ths to defendant Harris and 8/16ths to plaintiffs." Further alle-

gations were to the effect that about September, 1930, defendant made a written contract with Hicks and Hubbard for the latter to drill a well on the land; that the contract was assigned to plaintiffs "who are the owners of same. That under the terms of the contract between the plaintiffs and the defendant Harris, the plaintiffs are to operate the lease, and that the defendant Harris is to pay ½ of the operating costs, but is not entitled to any of the management or control of the operation of the lease under the agreement." It was also averred that plaintiffs had paid $1,562.08 for such reasonable and necessary expenses, by reason whereof Harris was due the plaintiffs ½ thereof in the sum of $781.04, which he had failed and refused to pay after being furnished with an itemized statement of said account, and for recovery of which judgment was also sought. It was alleged plaintiffs had a lien on Harris' part of the lease to secure payment of said sum, a foreclosure of which was prayed. Another allegation was: "Plaintiffs represent that the property is not subject to a division, and asks that the entire property be sold and the proceeds divided."

The prayer was for a restraining order to prevent Harris from interfering with their operation of the lease; for partition; for foreclosure of lien; for recovery of their debt and general relief.

The defendant Harris, in addition to a general demurrer and general denial, alleged substantially that he acquired the lease in question (160 acres) under a contract with the Texas Company; that at the time there was a well on the south 80 acres and certain equipment and some pipe in the well; that the well, when completed and reconditioned, was capable of producing 8 or 10 barrels of oil per day. He alleged that he informed Hicks of his arrangement with the Texas Company; that the latter retained 1/16th interest as an overriding royalty; and that he had agreed to pay the Texas Company for such casing and equipment at said well as he might desire to use in connection with his operations. He alleged that Hicks thereupon made certain representations to the effect that he represented the Apex Petroleum Company of which he was a stockholder; that said company was headed by G. E. Hubbard and son, who were practical oil men of long experience; that said company was the owner of large holdings in East Texas; that they had 237 barrels of production in the Powell field; that the company was financially responsible and able to drill wells for oil and gas in the territory around Albany, Tex.; that he (Hicks) had been sent out by the company for the purpose of acquiring oil properties in the vicinity; that he himself was a practical oil man of many years experience in the business; that he had inspected the lease in question and was desirous of making a deal with defendant.

It was alleged that, after defendant had explained the nature of his deal with the Texas Company, based upon belief in and reliance upon said representations, defendant made an agreement with said Hicks (the latter purporting to act for said Apex Petroleum Company), according to which the Apex Petroleum Company was to pay one-half of the costs of the equipment in connection with the Texas Company well and at its own cost and expense to drill a well on the north 80 acres of the 160-acre lease to a specified depth, unless oil and gas should be discovered at a lesser depth, and that the string of 8-inch pipe in the Texas Company well would be used in drilling the other well by the Apex Petroleum Company. That in pursuance of said agreement Hicks caused a drilling machine and equipment to be moved upon said 80 acres of land (i. e. the north one-half of the 160-acre tract), and commenced drilling operations, said Hicks at the time stating that Mr. Hubbard, the head of the company, would be out soon and a contract be executed embodying the agreement. That later Hicks reported that it was the wish of Hubbard to have the agreement in two separate contracts because of the lack of charter power in the company to engage in prospecting operations, and that it was further Hubbard's wish that the new well should be drilled in the name of Hicks & Hubbard for the benefit of the company; that the latter would pay over its portion of the cost of the equipment at the Texas Company well in order to carry on such operations, and that upon completion of the well the company would take over and operate the entire lease. That thereupon and because of said representations defendant executed the written contract in question having reference to the drilling of the new well, and the contract was (therefore) partly in writing and partly oral, the contract alleged in plaintiff's petition being only a part of the entire agreement. Then follow allegations to the effect that all said representations were false and fraudulently made; that Harris had no authority to bind the Apex Petroleum Company, etc. Other allegations were designed to show injury from the alleged fraud. Among the damages alleged was defendant's consequent inability to recondition the Texas Company well, and because of the failure of production, in order to prevent termination of the entire lease he was forced to surrender the south 80 acres upon which the well was situated to make good his right to the north 80 acres. It was further alleged that the new well had not been drilled in workmanlike manner and was uncompleted.

It was further alleged that when plaintiffs took over the contract of Hicks they had been notified that defendant had repudiated same, and that Hicks had no interest in the lease because of the alleged fraud. The allegation immediately preceding the prayer was "that

the defendant does not know what amount he must tender plaintiffs, if anything, but he offers to do equity."

The prayer was for cancellation and rescission of the contract and removal of same as a cloud upon defendant's title, etc.

Goodwin and White intervened, asserting claim to the 8-inch casing in the new well under a rental contract with Harris, and in the alternative a claim against Harris for the purchase price, with foreclosure of a lien "as herein alleged." No lien was alleged.

Three issues were submitted to the jury. In answer to the first it was found that Goodloe and Meredith had expended in operating the lease, after oil was found, the sum of $1,546.58. The second was answered to the effect that said sum of $1,546.58 was not a just and reasonable amount. In answer to the third it was found that $783.23 would have been a reasonable expenditure for the expense of operating the lease after oil was found.

The judgment recited the interests of the parties as alleged in plaintiffs' petition and that the property could not be partitioned in kind. It declared that the operating expenses of the lease should be borne by plaintiffs and Harris in the proportions of $\frac{8}{15}$ths by the former and $\frac{7}{15}$ths by the latter. It awarded Goodwin and White judgment against Harris for $592.50, as purchase price of the 8-inch casing in the well, and decreed the foreclosure of a lien upon Harris' interest to secure said amount. It further declared that it was necessary to keep the casing in the well so long as it continued to be a commercial producer, at the end of which time Harris had the right to pull same and retain as his own property. It was further provided that upon sale of the property to make partition $\frac{7}{15}$ths of the proceeds was to be paid to defendant Harris and $\frac{8}{15}$ths to the plaintiffs. It awarded plaintiffs recovery against Harris of $399.11 for his share of operating expenses, and provided for further operation of the lease under a receivership, the judgment purporting to appoint a receiver but leaving the name blank. The judgment further decreed that the receiver should pay the sum of $56.50 to the Albany Abstract Company as a part of the operating expense. Defendant Harris has alone appealed.

■ The contract between Harris and Hicks and assigned to the plaintiffs provided that it "shall be binding upon the parties hereto, their successors and *assigns*." (Italics ours.) If, therefore, the contract was not assignable, in the absence of this provision, as to which we need not stop to inquire, it was thus made so as an implied provision of the contract itself. Olcott v. Gabert, 86 Tex. 121, 23 S. W. 985; Jackson v. Pure Oil Co. (Tex. Civ. App.) 217 S. W. 959.

Appellant's third assignment of error complains of the judgment in awarding to him $\frac{7}{16}$ths interest in the lease. One of the reasons assigned for this complaint of the judgment is to the effect that it was necessary to have the issue of ownership or title determined. The fifteenth assignment of error also makes complaint of the judgment in awarding appellees recovery against appellant for the sum of $399.11 for operating expenses, the supporting reason for such complaint being that ownership of the leasehold estate was not submitted to, and determined by, the jury, and without such determination the court was without authority or power to enter any judgment under the pleadings and evidence for plaintiffs. These assignments of error and supporting reasons raise a very material question affecting the validity of the entire judgment.

■■ In an action for partition alone title is assumed. "Title to land not ordinarily being an issue in proceedings for partition thereof, the presumption is not that title is an issue but that title is not an issue." 47 C. J. 421, § 384. In fact a partition, even in kind, does not accomplish any transfer of, or change in, title. See authorities cited in Walling v. Harendt (Tex. Civ. App.) 37 S.W. (2d) 280. The answer of defendant Harris tendered an issue of title to the $\frac{8}{16}$ths interest which plaintiffs' petition alleged they owned. Whatever may be said as to the sufficiency or deficiency of defendant's pleading, it undoubtedly presented as an issue that plaintiffs' only title was by virtue of the contract which itself did not convey title but expressly provided that title was to be subsequently conveyed upon condition of performance of the contract, which contract had been repudiated and no conveyance made. "As an obstacle in the pathway to a legal and complete partition lay the condition of the title to the property." De La Vega v. League, 64 Tex. 205. The issue of title being injected into the partition suit, all further proceedings were but incident to, or at least dependent upon, the determination of that issue. As said in the case last cited: "A court of equity will not permit partition to take place if it is brought to their attention that the title is in dispute." Corpus Juris, after stating that the former strictness of the rule in certain respects had been abrogated or relaxed by statutory provision in many jurisdictions, further, with reference to the effect of such statutes, says: "But these statutes do not authorize the *substitution of a suit for partition for an action of ejectment or the use of the suit for the sole purpose of determining title*." (Italics ours.) 47 C. J. 306, § 96. The burden of pleading and proof was upon the plaintiffs to establish in themselves title to the interest claimed or some part thereof. Green v. Churchwell (Tex. Civ. App.) 222 S. W. 341. If, in partition suits merely assuming title as they do, allegations of the plaintiff of part ownership thereby cast up-

on the defendant the burden to show want of title in plaintiff, it would no doubt become a favorite practice for claimants of land with questionable titles to concede an adverse claimant some little interest, sue him for partition, and thereby be relieved of the burden of establishing title by casting the burden upon the defendant to show plaintiff's want of title.

■ Plaintiffs' pleading in this case tendered no issue of title such as to support judgment for recovery thereof. It was not alleged that plaintiffs or Hicks had drilled the well. It was not alleged that they had carried compensation insurance as the contract required them to do. Neither was it alleged, even as a conclusion, that they had performed their obligations under the contract, or if they had not, any facts to show a waiver of such performance or excuse for nonperformance. It was not alleged that Harris had breached any obligation to make a conveyance of the $8/16$ths interest in the lease. Holman v. Criswell, 13 Tex. 38. The pleading was not sufficient to state a cause of action, either in the nature of trespass to try title or for specific performance. The court therefore erred in awarding partition and likewise erred in other provisions of the judgment, since they were dependent upon the question of title.

■ What we have said above carries the implication that, if the question of title had been adjudicated favorably to plaintiffs, there would have remained no obstacle to a partition. We have deemed it best to dispose of the assignments discussed based upon that assumption. It is our opinion, however, that plaintiffs are not entitled to enforce a partition. Their title, if established, would necessarily be subject to the terms of their contract with appellant. That contract binds them to certain obligations respecting the operation of the lease. A partition would have the effect to abrogate these provisions of the contract. Such being the case, the right of partition does not exist. Elrod v. Foster (Tex. Civ. App.) 37 S.W.(2d) 339.

■ The court erred in decreeing existence of, and foreclosure of, a lien in favor of White and Goodwin. No lien was alleged or proved.

If plaintiffs' title be determined in their favor to the $8/16$ths interest, then we think their obligation to bear the cost of operation would be in the proportion of $8/15$ths to Harris' $7/15$ths, as was determined by the trial court. Plaintiffs' title will come through an assignment, which, by exempting the Texas Company of the obligation to pay any of the operating costs, thereby casts the entire burden upon $15/16$ths of the working interest in the lease. If $15/16$ths bears the total cost, $1/16$th will bear $1/15$th thereof, and $8/16$ths interest of plaintiffs will bear $8/15$ths, leaving Harris to bear the other $7/15$ths.

We can discover no basis in the pleadings for the foreclosure of a lien in favor of Goodwin and White, nor for the order to pay $56.60 to the Albany Abstract Company as a part of the operation expenses. The same is likewise true of the provision that the eight-inch casing is to remain in the well so long as the well continues to be a commercial producer. It is deemed so elementary as not to require discussion that there must be pleadings to support the provisions of a judgment.

It is therefore our opinion that the judgment of the court below should be reversed and the cause remanded, which is accordingly so ordered.