## MAGNOLIA PETROLEUM CO. et al. v. JACKSON et al.

### No. 3192.

Court of Civil Appeals of Texas. El Paso.

May 9, 1935.

Rehearing Denied May 30, 1935.

See, also, 80 S.W.(2d) 388.

W. H. Francis and Walace Hawkins, both of Dallas, and Tom Beauchamp, Frank Bezoni, and Butler, Price & Neill, all of Tyler, for appellants.

Ramey, Calhoun & Marsh and Weeks, Hankerson & Potter, all of Tyler, for appellees.

HIGGINS, Justice.

This suit involves the title to a 1 acre tract of land. By dismissal, some of the original parties were eliminated, and upon the trial the issues narrowed to L. S. Tunks, J. A. Hard, R. A. Noah, B. H. Bird, and F. W. Waldron, trustees of Fair Chapel Methodist Episcopal Church South, and D. L. Edminston, as plaintiffs, against Magnolia Petroleum Company, J. R. Wright, E. H. Samuel, and others not necessary to mention, as defendants.

In addition to the claim of record title, both sides asserted title by limitation. Upon the issues of limitations the jury found in favor of the plaintiffs under the five and ten-year statutes and against the defendants' counterclaim of title under said statutes.

Judgment was rendered in favor of the plaintiffs, from which the particularly named defendants appealed to the Court of Civil Appeals of the Sixth district. By equalization order of the Supreme Court,

the appeal was later transferred to this court.

The land is out of a 137½-acre tract in the Juan Vargas League conveyed to J. M. Jackson by Clay Denton and wife by deed dated August 19, 1903, filed for record February 8, 1904.

On October 14, 1903, Jackson and wife conveyed the land by deed reading:

"Know all men by these presents:

"That we, J. M. Jackson and wife, L. P. Jackson, of the County of Smith, State of Texas, for and in consideration of the love we bear for the cause of Christ, and from an earnest desire to promote His heritage on earth, do give and grant and by these presents convey unto B. F. Thompson, J. W. Ritch and J. P. Ritch, the Board of Trustees of the Methodist Episcopal Church, South, and to their successors in office, for the use and benefit of Marvin's Chapel Methodist Church, as a site for a house of worship, according to the Doctrines, faith and practice of the said Methodist Episcopal Church, South, to be applied by the said Trustees to the object stated, under the direction of the General Conference of the Methodist Episcopal Church, South, the following described property and premises, situated in Smith County, Texas:

"A part of the Juan League of land more perfectly described as follows: Beginning at N. W. corner of J. C. Hughes tract of land; Thence South Seventy (70) yards; Thence West seventy (70) yards; Thence North seventy (70) yards; Thence East seventy (70) yards to the place of beginning, being one acre of land out of the East side of a tract conveyed to me by Clay Denton, and the said Trustees are to have and to hold the property aforesaid for the use aforesaid, free from the claim or claims of myself, my heirs, my executors or administrators and from the claims of all persons whatsoever."

By deeds executed in 1925, 1926, 1927, and 1928, the surviving wife and heirs of J. M. Jackson conveyed the 137½-acre tract to the defendant Wright.

On September 13, 1930, Wright gave an oil and gas lease upon the 137½-acre tract to Magnolia Petroleum Company. Samuel acquired an interest in the royalty reserved by Wright.

The plaintiff trustees claim to be the successor trustees of B. F. Thompson, J. W. Ritch, and J. P. Ritch, the original trustee grantees named in the Jackson deed of October 14, 1903. Edminston holds an oil and gas lease executed by the plaintiff trustees.

## Opinion.

The question which first arises is the character of estate conveyed by the Jackson deed for the evidence shows that not later than 1928 the church house upon the land was burned and the use of the land as a site for a house of worship was then permanently abandoned.

The appellant's theory is that only an easement for use as a site for a house of worship passed by the deed and upon abandonment of such use the easement terminated.

■ The deed gives, grants, and conveys the land itself to the trustees named. Under the decisions in this state, particularly the recent rulings in T. & P. Ry. Co. v. Martin, 123 Tex. 383, 71 S.W.(2d) 867, Hughes v. Gladewater C. L. I. School Dist. (Tex. Com. App.) 76 S.W.(2d) 471, and Stanbery v. Wallace (Tex. Com. App.) 45 S.W.(2d) 198, it must be held that the grantees took, under the deed, a fee-simple title in trust for the use and benefit of Marvin's Chapel Methodist Church.

In this connection see, also, Olcott v. Gabert, 86 Tex. 121, 23 S. W. 985, Stevens v. G., H. & S. A. Ry. Co. (Tex. Com. App.) 212 S. W. 639, Tarrant County v. McLemore (Tex. Sup.) 8 S. W. 94, and Barker v. Hazel-Fain Oil Co. (Tex. Civ. App.) 219 S. W. 874.

Appellants also contend that no privity of estate is shown between the trustees of Fair Chapel Methodist Episcopal Church and the grantees named in the deed who held in trust for Marvin's Chapel Methodist Church. The appellants' theory is that Fair Chapel Church is an entirely different local association of the Methodist Church, recently organized. On the other hand, the appellees assert that the name of Marvin's Chapel Methodist Church was changed to Fair Chapel Methodist Church; that it is the same church and the plaintiff trustees are the successors in trust of the original grantees.

Marvin's Chapel Church was built in 1904 upon the land in controversy and an adjoining 1 acre tract to the east which was not a part of the Jackson 137½-acre tract. The church and use thereof was actively and regularly maintained in the building until about February 27, 1913,

when the roof was damaged by hail. This damage was never repaired and church service therein was not so regularly maintained after such damage, but the evidence shows that it continued to be used as a place of worship by the Marvin's Chapel congregation and occasionally by other religious denominations until the destruction of the building by fire. According to the testimony of the defendant Wright, it w'ıs so destroyed in 1922, but according to tne testimony of Mrs. Ritch, the fire occurred in 1926, 1927, or 1928. Upon the development of oil in that section, a town called Wright City was built upon the highway near the land in controversy. What is now known as Fair Chapel Church is in Wright City, built upon a site donated by R. W. Fair and A. G. Hancock. The deed from Fair and Hancock is dated September 22, 1932, is conditioned that the land should be used for church purposes only, and provides that the church should be known as Fair Chapel Church. The conveyance was to "Henry Smith, Mrs. Henry Smith, and J. J. Denton as Trustees for the Methodist Episcopal Church South, of Wright City, Rusk County, Texas." After the destruction of the house upon the land in controversy, the Marvin's Chapel congregation seems to have ceased to function as an active religious association, but in 1932 Mr. and Mrs. Henry Smith came to Wright City and organized a Methodist Church there which is still active. The plaintiff trustees are the duly elected trustees of that church, now known as Fair Chapel Church.

■ The question at issue, as we view it, is whether that church is to be regarded as a reorganization of Marvin's Chapel Church under a new name. If so, the Fair Chapel Church and its trustees are in privity with Marvin's Chapel Church, and the trustees to whom the land was originally conveyed for a mere change in name of a local unincorporated religious association does not affect the property rights of trustees holding property for the benefit of such association.

In behalf of plaintiffs, Rev. Gordon Alexander testified:

"Q. Are you a minister of the gospel? A. Yes, sir.

"Q. Were you ever a minister in Fair Chapel Church? A. Yes, sir.

"Q. I will ask you this; when did you go to that church? A. Went to the church, Fair Chapel Church now, about the latter part of July, or first of August, 1932.

"Q. When you were there was it called Marvin's Chapel or Fair Chapel? A. Marvin's Chapel.

"Q. When you were there, it was Marvin's Chapel? A. Yes, sir.

"Q. Was the name of that Church changed? A. It was.

"Q. Were you the minister when the change took place? A. I was.

"Q. How was that change made? A. It was made after annual conference in 1932. It was made in about two or three weeks after that conference in order to coincide with piece of land given to the church.

"Q. Was the change in 1932 or 1933, your best knowledge? A. 1932.

"Q. What part of 1932? A. Latter part, Bishop appointed me to Marvin's Chapel in November, and it was within six weeks after that time.

"Q. Were you assigned to Marvin's Chapel Church by the Bishop of the Methodist Church? A. Yes, sir, in the conference that met at Navasota in 1932.

"Q. Navasota Conference assigned you to Marvin's Chapel Church? A. Yes, sir.

"Q. When you got there, any other minister serving there? A. When I got there in July, Rev. I. O. Dent was pastor there.

"Q. Do you know how long he had been serving as pastor? A. No, I had been out of the conference five years.

"Q. He was there when you got there? A. Yes, sir.

"Q. This church you were assigned to was up on the highway at Wright City? A. Yes, sir.

"Q. It was not on the lot in controversy? A. No, the building was not there.

"Q. About one and one-half miles? A. Estimate three quarters of a mile.

"Q. Upon the highway? A. Yes, sir; there was no property other than the Marvin's Chapel Methodist Church.

"Q. I am asking about the church lot, one and one-half or three-quarters of a mile from the land in controversy? A. No, there was no church lot other than Marvin's Chapel when I went or was assigned there.

"Q. Where was the church situated?

"Court: Where were you holding services? A. At Wright City.

"Q. That was on the tract of land Mr. Fair deeded to them? A. No.

"Q. Not on the tract of land Mr. Fair gave to the church? A. No.

"Q. But it was not on this particular lot in controversy? A. No.

"Q. Was the tract given to the church by Mr. Fair given after you got there? A. Yes, sir.

"Q. Were there ever at any time two distinct churches out there, Mr. Alexander? Marvin's Chapel Church and also Fair Chapel Church, were there two churches? A. Not while I was there.
* * *

"Q. Was there just one church out there at all times? A. One Methodist Church is all.

"Q. That is the Church whose name was changed from Marvin's Chapel to Fair Chapel? A. Yes, sir.

"Q. Brother Alexander, you say you went there in July, 1932? A. July or August; don't remember exactly, latter part of July.

"Q. Bishop sent you there? A. No.

"Q. Who sent you? A. Presiding elder, Marshall District.

"Q. Anybody else send you? A. No, he has complete authority over his district.

"Q. You then went to about where Wright City is? A. Yes, sir, I was sent there by the Presiding Elder.

"Q. When you got there, you got you up a few members and you started the church? A. No, there was a church organized there at the time; Brother I. O. Dent preaching in a revival there.

"Q. Revival was there; is that correct? A. Yes, sir.

"Q. That was July or August, 1932? A. Yes, sir, long about that time."

The plaintiffs also offered the minutes of the quarterly conference of the Methodist Church for the Marshall district, the caption of which shows it was held at Marvin's Chapel Church, but the word Marvin seems to have been written over the word Fair. These minutes show: "The motion to change the name of the Church to Fair Chapel Church in honor of Mr. Walter Fair prevailed. This change was from the name Marvin's Chapel."

From other testimony, it may be inferred that the superior church authorities recognize Fair Chapel Church as the successor of Marvin's Chapel Church.

E. O. Henson testified he became a member of the original Marvin's Chapel Church about 1911; that he was elected a trustee in 1914 and had never been discharged; had never been in the church in Wright City; that they continued to have meetings in the church until about two years before it burned.

He further testified:

"Q. What happened to the church at that time? A. It just quit. We did not try to have any meetings off in the back woods, we called it then, difficult to get to.

"Q. Have many of the people who lived there moved away? A. Good many then, yes, sir. * * *

"Q. In 1932 when the church at Wright City was organized, were you there? A. No, sir.

"Q. Were you notified about it? A. No, sir.

"Q. Invited to be there? A. No, sir.

"Q. You were still a trustee of the Marvin's Chapel Church? A. Yes, sir.

"Q. You were the only surviving trustee at that time? A. Yes, sir."

Mrs. Ritch testified she was a member of the old church when it was built and remained a member thereof. She further testified:

"Q. Do you know about the building of the new church upon the highway at Wright City; do you recall that new church having been built within the last three or four years? A. Yes, sir.

"Q. Do you know about how long ago it was built? A. I think in 1932.

"Q. Did you know a Mrs. Smith that assisted in building that church? A. Yes, sir, I met her a few times.

"Q. Did you take any part, Mrs. Ritch, in assisting to build that church? A. Yes, sir.

"Q. What part did you take? A. She came and got me, asked me to go with her around, see who she could get to donate to the church. I went a couple of evenings with her; I also donated to the church myself.

"Q. What church you donate to? A. What is now Fair Chapel Church. She told me at that time it would be Marvin's Chapel.

"Q. You were going around seeing other people to help build that church with her? A. Yes, sir, few of them.

"Q. Have you attended any meetings at the new church? A. I have not.

"Q. Are you a member of that church? A. No, sir, only old Marvin's Chapel is all; never went over to the new church.

"Q. Do you know whether or not your membership in the old Marvin's Chapel Church was carried over into the Fair Chapel Church? A. No, sir, I don't. * * *

"Q. Say you contributed money to Marvin's Chapel Church at Mrs. Smith's request? A. Yes, sir.

"Q. Is this Fair Chapel the one that was built with your money? A. Yes, sir. * * *

"Q. You attended there all the time except the two years you were away? (referring to the old church.) A. No, not all the time, when they would have church there, I did attend.

"Q. You kept your membership there? A. Yes, sir.

"Q. Some of the members moved to Red Oak Flat, you stated before? A. We go to church there; if any of the Methodists have put membership there, I don't recall it, have not heard about it. We go to church there, but if any of us joined, don't know anything about it. There were not but a few members at Marvin at that time; they have all died out."

J. J. Denton, one of the trustee grantees of the Fair-Hancock deed, testified he was a member of the old church having joined when he was quite young.

He further testified:

"Q. I noticed your name in the deed from R. W. Fair and A. G. Hancock, 1932, as one of the trustees of the Methodist Episcopal Church South of Wright City; were you one of the trustees of that church up there? A. No, sir, they tried to put me in and I would not accept.

"Q. Who tried to put you in? A. Mrs. Smith.

"Q. That Mrs. Henry Smith, also named as trustee? A. I suppose so, yes, sir.

"Q. Did you know her? A. Didn't know much about her; she come in with the oil field people, you know; tried to organize this church and put me in as one of the trustees, and I told her I would not accept. She went ahead anyway, over to conference. I did not go to conference; she put me in. I would not accept; told

her after I came up here and seen Judge — * * *

"Q. When this suit was first brought and the Jackson heirs against Mr. Wright and the church, pleadings show that you were one of the trustees; I will ask if you were served by any process as trustee? A. Yes, sir.

"Q. What did you do about it? A. I told her I would not serve, not to put me in but she went ahead and made me trustee anyhow; after I found it out, I told her I was not going to serve and. I did not serve as trustee.

"Q. Have you ever served as trustee at any time since then? A. No, sir."

█ We overrule appellants' contention that the evidence is insufficient as a matter of law to show the privity of the plaintiff trustees with the title conveyed by the Jackson deed. Neither do we regard the evidence sufficient to conclusively show, as a matter of law, such privity so as to dispense with the necessity of submitting the issue to the jury. The issue is one of fact depending upon whether the present church is a reorganization of the old church. If so, the change in name is wholly immaterial.

The evidence fails to show that a single member of the old church is or has ever been a member of the new church. The evidence indicates the contrary. Not one member of the old church is shown to have had anything to do with the organization of the new church except Mrs. Ritch who is not a member of the new church, but who donated to it and upon two occasions went around with Mrs. Smith soliciting donations. Denton, a member of the old church and one of the trustees named in the Fair-Hancock deed, declined to serve and had nothing to do with the new church. Henson, the last surviving trustee of the old church, has never been in the new church and has nothing to do with it. The old church was a rural one. The house of worship of Fair Chapel is one and one-quarter miles distant and in a newly built town.

These circumstances raise an issue of fact whether Fair Chapel is a reorganization of Marvin's Chapel or an entirely new and different local association of members of the Methodist faith and in no privity with the Marvin's Chapel association.

█ This is the sole and controlling issue of fact upon which the record title

of plaintiffs depends. The limitation title which they assert is also primarily dependent upon it. Under the ruling in Ormsby v. Ratcliffe, 117 Tex. 242, 1 S. W.(2d) 1084, it was necessary to submit such issue to the jury. In the absence of such submission and a finding thereon in the plaintiff's favor, the judgment must be reversed. Appellants' third proposition raising this question is sustained.

Our rulings upon other questions raised will be briefly announced. Since the case must be retried, the evidence in connection therewith will not be discussed.

The fifth and sixth propositions which involve the sufficiency of the description contained in the Jackson deed are overruled.

The land is described as being out of the east side of a tract conveyed to me by Clay Denton. This locative call identifies the northwest corner of the J. C. Hughes tract, the beginning corner of the 1 acre tract, as being the northwest corner of the southern Hughes tract rather than the northwest corner of the northern tract of Hughes land. Appellants are charged with constructive notice of such location call.

The evidence is sufficient to support all findings made upon the issues of limitation, but the issue of limitation title vested in plaintiffs is material only in the event the description of the land contained in the Jackson deed be regarded as defective.

The judgment was rendered July 12, 1934. Motion for new trial was overruled six days later. On July 26, 1934, plaintiffs filed motion for appointment of a receiver. The next day a receiver was appointed. On the same date appears an order overruling a motion of appellants to set aside the order appointing the receiver though such motion is not shown by the record.

From the order appointing the receiver, the Magnolia Petroleum Company appeals. One transcript contains the proceedings upon which are based the judgment upon the merits and the order appointing the receiver.

While the appeals were still pending in the court of the Sixth district, appellants filed a motion to advance submission of the cause and stay further proceedings in the receivership pending the appeal. This motion was overruled by the court of the Sixth district in an opinion rendered by Chief Justice Johnson. See (Tex. Civ. App.) 80 S.W.(2d) 388.

The opinion of Judge Johnson summarizes the motion in the court below for the receivership and need not be here restated.

The last proposition submitted in appellants' brief complains of the order appointing the receiver upon the ground that the order is void because such appointment was made without notice. Notice of an application for the appointment of a receiver is not necessary to empower the district court to exercise its jurisdiction to appoint a receiver though such authority should never be exercised except in cases of pressing necessity for immediate action. Cotton v. Rand (Tex. Civ. App.) 92 S. W. 266; White Star, Inc. v. English (Tex. Civ. App.) 286 S. W. 255; Zanes v. Lyons (Tex. Civ. App.) 36 S. W.(2d) 544; Myerscough v. Garrett (Tex. Civ. App.) 45 S.W.(2d) 1003.

The order was not void for want of notice and the appellants' proposition so urging is overruled. As to the sufficiency of the grounds stated in the application for the receivership to justify the appointment upon ex parte hearing, we express no opinion as no point in that respect is presented.

The order appointing the receiver is affirmed; the judgment upon the merits is reversed and remanded.

### On Rehearing.

In motion for rehearing appellees cite Brown v. Clark, 102 Tex. 323, 116 S. W. 360, 24 L. R. A. (N. S.) 670, in support of the view that the action of the superior church authorities of the Methodist Episcopal Church South in recognizing Fair Chapel Church as the successor of Marvin's Chapel Church is conclusive and binding upon the courts.

In the case cited the evidence upon the issue was fully developed. In the present case the evidence of such recognition by the higher church authorities is very meager. As stated in the main opinion, such recognition is inferable, but it does not necessarily follow. Furthermore, in Brown v. Clark the evidence was fully developed showing the jurisdiction and authority of the General Assembly of the Presbyterian Church over the issue in controversy. Such is not the case here. Upon retrial, evidence perhaps may be produced conclusively showing such recognition by the higher tribunals of the Metho-

dist Church and their authority to decide the issue here involved so as to bring the case within the ruling in the case cited. The present record is insufficient for such purpose.