**TRAVELER'S INS. CO. OF HARTFORD, CONNECTICUT v. HOBBS.**

No. 11949.

Court of Civil Appeals of Texas. San Antonio.

May 4, 1949.

Rehearing Denied June 1, 1949.

Kemp, Lewright, Dyer & Sorrell, Corpus Christi, Cecil D. Redford, Corpus Christi, for appellant.

King & Nesbitt, Corpus Christi, for appellee.

### W. O. MURRAY, Justice.

This suit was filed by Mildred L. Hobbs, individually and as next friend of her minor son, Bobbie L. Hobbs, to recover workmen's compensation benefit alleged to be due by reason of the death of her husband, Robert L. Hobbs, under a workmen's compensation policy issued by the Traveler's Insurance Company of Hartford, Connecticut, to the City of Corpus Christi, and to which policy was attached a voluntary compensation endorsement. Robert L. Hobbs, a policeman in the employment of the City of Corpus Christi, Texas, was killed by an automobile on Horner Road or Street in said City on November 25, 1947. The trial was to a jury and judgment was rendered in favor of Mildred L. Hobbs and Bobbie Lee Hobbs, based on the findings of the jury. From this judgment the Traveler's Insurance Company of Hartford, Connecticut, has prosecuted this appeal.

Appellant's first contention is that there is no evidence to support the jury finding to the effect that Robert L. Hobbs at the time of his death was acting or serving in the course of his employment as a policeman of the City of Corpus Christi. The evidence shows that on November 25, 1947, Mrs. Hobbs and her husband, Robert L. Hobbs, were walking arm in arm on Horner Road. Mrs. Hobbs was going to the grocery store and Robert L. Hobbs was either on the way to the store or to the police station. He was technically off duty just prior to the time of the accident, but a rule of the police department provided that while technically off duty, an officer was not relieved from taking proper action if an occasion arose requiring the same. While Mr. and Mrs. Hobbs were thus walking on Horner Road in the City of Corpus Christi, Hobbs was struck by an automobile driven by Max Herman Cash, and died as a result of the blow. The accident occurred about 6:15 p. m., and Hobbs' tour of duty commenced at 10 p. m. Hobbs was in his police uniform at the time. Shortly before the accident Mrs. Hobbs handed an unlighted flashlight to Hobbs. After the accident this flashlight was picked up and was at that time turned on. Mrs. Hobbs was walking about a foot from the drainage ditch along the left side of the road, arm in arm, with Hobbs who was on her left. She heard a car approaching from the rear at a high rate of speed; Hobbs pushed her into the ditch with his body; Mrs. Hobbs said, "lookout, honey, you are pushing me in the water"; she made three or four steps, trying to get back on the road, and then the car hit him and missed her about half a foot; approximately four seconds elapsed from the time Hobbs pushed her into the water until the car hit him. After being pushed into the ditch she saw her husband only as a form out of the corner of her eye; he was then two feet from the water in the ditch; she did not observe anything that he did; she was not in a position to see what he was doing. The body of Hobbs was found about sixty feet from where he was

struck. She knew nothing as to what Hobbs was doing after he pushed her towards the ditch. It was daylight at the time and they were able to see without the aid of a flashlight.

The examination of the body of Hobbs showed that he had been hit in the middle of the back, down low, by some sharp object which had penetrated as far as the length of a finger and one and one-half inches in width, and there was evidence of a blow in the back of the head. The location of the wound in the back corresponded in height to the parking light on the left front fender of Cash's car, and the wound in the back of the head to a dented place in the left side of the hood. At the time of the collision the driver of the automobile was operating it on the left-hand or wrong side of the road and at an excessive rate of speed.

We overrule appellant's contention that there was no evidence to support the finding of the jury that Hobbs was acting and serving in the course of his employment as a city policeman at the time he was struck by the automobile, and thereby killed. It is true that at the time of Hobbs' death he was not serving on a regular tour of duty, but the following regulation with reference to police officers technically off duty was in full force and effect to wit: "Officers are held to be always on duty, although periodically relieved from the routine performance of it. They are always subject to orders from superior officers and to calls from civilians and the fact that they must be technically 'off duty' shall not be held as relieving them from the responsibility of taking proper police action in any matter coming to their attention."

██ Here it is apparent that Cash, the driver of the automobile, was violating two laws, one against driving on the wrong side of the road and the other, driving at an excessive rate of speed. The fact that Hobbs was aware of these violations of the law is apparent from the fact that he pushed his wife into the water in the drainage ditch on the side of the road. He was not struck by the automobile until four seconds thereafter. If he was planning to do nothing other than to save himself he could have easily gotten into the water before being struck during this lapse of four seconds. We do not place a great deal of importance upon the fact that the flashlight was found turned on after the accident because it was daylight at the time and there would be no good reason for his having turned the flashlight on. We would rather be inclined to believe that it was turned on in some manner as a result of the collision. There is no direct evidence from any one as to just what Hobbs was doing during this four-second interval. However, officers are presumed to do their duty until the contrary is shown, and the jury had a right to presume, under the facts here presented, that Hobbs was attempting to take appropriate police action at the time he was killed, there being no evidence to the contrary. Gabert v. Olcott, 86 Tex. 121, 23 S.W. 985; 17 Jurisprudence 276, § 75; 22 Corpus Juris pp. 130 and 136, 31 Corpus Juris Secundum, Evidence, p. 798, § 146; Citizens Hotel Co. v. Foley, Tex.Civ.App., 131 S.W.2d 402; Brazell v. Gault, Tex.Civ.App., 160 S.W.2d 540; Gould v. State, 94 Tex.Cr.R. 18, 252 S.W. 772.

Appellant cites the case of Baughman v. City of Omaha, 142 Neb. 663, 7 N.W.2d 365. In that case it was held that a city detective struck by an automobile while leaving police headquarters to go home was not acting in the course of his employment, but the facts in that case differ from the present case in that there was not a violation of the law happening at the time, requiring police action. There is an intimation in the opinion that if some violation of the law had been taking place at the hotel toward which he was walking at the time he would have been regarded as acting in the course of his employment.

██ We are of the further opinion that aside from the presumption that a police officer will do his duty, there is sufficient substantial evidence in this case to support the jury's finding that Hobbs was acting in the course of his employment. Mrs. Hobbs heard the approaching car, driven by Cash, and as both she and Hobbs had normal hearing we must presume that Hobbs also heard the car. The fact that he pushed his wife into the water is evi-

dence of the fact that he not only heard the car, but realized the great danger that existed, and that he pushed his wife into the water to prevent her from being struck by the automobile. This would be appropriate action for a police officer to take under the circumstances, it would be his duty to push a person out of the way of an oncoming automobile to prevent her from being injured, and the fact that the person pushed in this instance happened to be the wife of the policeman did not prevent such action from being that of a police officer. This act alone was sufficient to show that he had assumed to act in the course of his employment. Under the rules and regulations with reference to police officers technically off duty, the moment such a police officer discovers a violation of law and undertakes to exercise appropriate police action, he is at that moment acting in the course of his employment. There was sufficient evidence to support the finding of the jury that Hobbs was acting in the course of his employment, and the trial court properly rendered judgment for appellees based upon such finding of the jury.

Appellant next contends that the court erred in refusing to submit its special requested Issue No. 1, reading as follows: "Do you find from a preponderance of the evidence that the plaintiff, Mrs. Mildred Hobbs, accepted payment or property from Max Herman Cash in settlement of claims, if any, she had against the said Max Herman Cash, arising out of the death of her husband, Robert L. Hobbs?"

■ We overrule this contention. Appellant did not plead that Mrs. Hobbs had settled her claim against Cash, and when evidence was offered relating to the subject, it was objected to by appellee, and a full bill of exceptions allowed by the trial court. The only pleading relating to such matter was in a trial amendment filed by appellant after the close of the testimony. The filing of this trial amendment was improper and was not authorized by either Rule 66 or 67 of the Texas Rules Civil Procedure.

A defendant is not entitled to have an affirmative defense submitted to a jury unless he has affirmatively pleaded such defense. Rule 94, Texas Rules Civil Procedure.

■ However, aside from the question of pleading, there was no evidence to show that Mrs. Hobbs had settled her claim against Cash. The evidence did show that Cash had given Mrs. Hobbs his automobile and a note in the principal sum of $500, payable in monthly installments of $25 each. But there is no evidence that Mrs. Hobbs accepted this gift from Cash as settlement of her claim against him for the damages growing out of the death of her husband. The evidence shows that she refused to sign an instrument thought to be a release of her claims against Cash. She further testified that Cash gave her his automobile and this note because he was faced with a criminal prosecution for the death of Hobbs and he wanted to be in a position to show that he was in sympathy with Mrs. Hobbs, and he also wanted Mrs. Hobbs to tell the judge of the criminal court that he had made this donation to her in the hope that he might secure a continuance, as he was not ready for trial. There is absolutely no evidence in the record that Mrs. Hobbs accepted this donation from Max Cash as a settlement in full of her claim against him.

The court properly refused to submit appellant's special requested Issue No. 1.

Accordingly, the judgment of the trial court is affirmed.