## BUTLER v. PRICE.

### No. 10930.

Court of Civil Appeals of Texas. Galveston.

Feb. 29, 1940.

Rehearing Denied March 28, 1940.

Earle P. Adams, of Crockett, for appellant.

Kennedy & Granberry, of Crockett, for appellee.

MONTEITH, Chief Justice.

This is an appeal from a judgment of the county court of Houston County in an action brought by appellant, C. W. Butler, Jr., against appellee, Perry A. Price, on a note for the sum of $490.85, executed by appellee and payable to appellant on demand.

Appellee answered by general demurrer, a general denial, and pled specially that prior to the execution of said note he was indebted to appellant on an open account which was barred by limitation; that appellant, who was a member of the Texas Prison Board, intimated to him that if he would execute and deliver to him a note for said barred debt he would secure a position for him in the penitentiary system as a convict guard.

Based on these allegations appellee pled (1) that said note was without consideration; (2) that the consideration therefor had wholly failed; (3) that said consideration was contrary to public policy and void; and (4) that said note did not speak the entire agreement between the parties, in that it was understood between him and appellant that said note would be paid out of the proceeds of his earnings as such convict guard.

The jury, in answer to three special issues submitted, found in effect: (1) That prior to the execution of said note appellant had made representations to appellee that he would assist him in securing a job with the Texas Penitentiary system; (2) that such representations were made for the purpose of inducing appellee to execute said note; and (3) that appellee believed said representations to be true and relied upon them at the time he executed the note.

The court also submitted the following special issue No. 4, which the jury failed to answer: "Do you find from a preponderance of the evidence that defendant, Perry A. Price, executed and delivered the note in controversy on the condition that the plaintiff, Dr. C. W. Butler, Jr., would assist him in securing a job with the penitentiary system?"

Based on the answers to said three issues the trial court rendered judgment in favor of defendant.

At the conclusion of the evidence by both sides, appellee filed his admission, under district and county court rule No. 31, to the effect that he had executed the note sued on and that appellant had a good cause of action as set forth in his petition except in so far as it might be defeated by the facts of his answer. Under said admission he was accorded the right to open and close in the argument.

Under the established law of this state this admission constitutes an abandonment of all defensive matter, except that in the nature of confession and avoidance, including an abandonment of the plea that the note sued on was without consideration. National Bank of Commerce v. Williams, 125 Tex. 619, 84 S.W.2d 691; Rector v. Evans, Tex.Com.App., 6 S.W.2d 105; Ferguson v. American Bank & Trust Co., Tex.Civ.App., 13 S.W.2d 459, writ refused.

Under this record the controlling question to be determined in this appeal is whether

the issues submitted to the jury and the judgment rendered thereon by the trial court are supported by the pleadings of appellee.

In his original answer appellee alleged that appellant: "approached defendant and intimated to him (amounting to a statement) that if he, defendant, would execute and deliver to him, plaintiff, a promissory note for said barred debt, due on demand, he, plaintiff, would secure for defendant a position in the penitentiary system of Texas as a convict guard. * * * That defendant would not have executed said note except for the promises and representations made to him by plaintiff, and defendant further says that plaintiff has wholly failed to carry out his promises and has failed to even attempt to do so."

The court submitted the following issue No. 1: "Do you find from a preponderance of the evidence that prior to the time that defendant executed the note involved in this suit the plaintiff, Dr. C. W. Butler, Jr., made representations to the defendant, Perry A. Price, that he would *assist him in securing a job* with the Texas Penitentiary System?" (Emphasis ours). The jury answered this issue in the affirmative.

The jury found in answer to issue No. 2 that the representations inquired about in issue No. 1 were made for the purpose of inducing appellee to execute said note, and in answer to issue No. 3 found that appellee believed said representations to be true and relied upon them at the time he executed said note.

The jury failed to answer issue No. 4 inquiring as to whether appellee executed and delivered said note on the condition that appellant would assist him in securing a job with the penitentiary system.

The fact that special issue No. 1 was not based on any pleadings in the record was definitely pointed out to the court in the objections made by appellant to the submission of said issue, and said objections were carried forward by assignment of error. Appellant further requested that the court submit to the jury an issue as to whether, prior to the execution of said note, the plaintiff represented to defendant that, if he would execute and deliver to him the note sued on, he would secure for him a position in the penitentiary system. The court refused to submit said issue.

The record shows the following testimony in reference to the execution of said note by appellee: "I came on to Crockett to Dr. Butler's office and we talked for some time before I signed the note. I told him that I wasn't making any money farming to pay on my old debts and that I had quit farming and that I wanted to get a job guarding convicts or some other job in the Penitentiary System, and that if I had such a job I would be able to pay my old debts. He told me that he thought I rated a better position than a guard's job, that he would like to see me manager of one of the farms since I had had experience both in farming and in guarding convicts. He said that he was in a position to help me get a position in the Penitentiary System, and he intimated to me by the way he talked that he would help me get such a job if I signed the note for my account, and I believed him. I do not believe that I would have signed the note if he had not intimated to me that he would help me get a job in the Penitentiary System. He told me that there were not any jobs open just then, but that something was going to work out and for me to watch the newspapers and keep in touch with him; that I should write him a postal card every week until something developed."

On cross-examination defendant testified: "Yes, on the day I came to Dr. Butler's office, that is on the 23rd day of December, 1938, I came in intending to sign the note. Mr. Lively had told me earlier that morning the amount of the note and that Dr. Butler was going to help me. * * * No, in the conversation I had with Dr. Butler there in his office before I signed the note he did not tell me, in so many words, that if I would sign the note he would secure a position for me in the Penitentiary System, or that he would help me secure such a position if I would sign the note. There was no argument between Dr. Butler and myself about signing the note, and I did not tell Dr. Butler that I had any objections to signing it. No, I did not tell Dr. Butler in so many words that I would give him a note if he would secure a job for me in the Penitentiary System, or that I would give him a note if he would help me to get a job in the Penitentiary System. But he did tell me that he would help me secure a position in the Penitentiary System."

On re-direct examination he testified: "On the day I signed the note and before I signed it, Dr. Butler and I did not have a positive agreement that I would sign such note only if he would get me a job in the Penitentiary System, but all that he said

304.

led me to believe that if I would sign the note he would get me such a position; and this together with what Mr. Lively had told me is the reason I signed the note."

Defendant testified that Mr. Lively told him: "Mr. Lively told me that he had reported to Dr. Butler the night before on our conversation the day before, and that Dr. Butler was very much interested in me and would help me get a job with the Penitentiary System."

The law is well settled in this state that the relief granted by the court must be such, and only such, as is warranted by the pleadings; Floydada v. Gilliam, Tex.Civ.App., 111 S.W.2d 761; Harris v. Goodloe et al., Tex.Civ.App., 58 S.W.2d 156; Shackelford v. Neilon, Tex.Civ.App., 100 S.W.2d 1037; that one who seeks to avoid a written obligation must clearly plead his defenses, Tarlton v. Daily, 55 Tex. 92; Klock v. Dowd, Tex.Com.App., 280 S.W. 194; and that a trial court cannot render judgment to conform to the verdict of a jury on issues not raised by the pleadings.

In the instant case appellee alleged that appellant intimated to him that, if he would execute and deliver to him a note for said barred debt, he would secure a position for him in the penitentiary system. By his admission, filed for the purpose of securing the right to open and close in the argument, appellee abandoned every defense pled by him except that of failure of consideration. A careful study of the facts shows that there is no testimony in the record tending to prove that appellee executed and delivered said note because of a promise by appellant to secure a position for appellee in the penitentiary system, or that appellant promised appellee that said note, or any part thereof, might be paid out of appellee's salary when said position was secured for him. Further, the issues submitted require a finding, not as to whether he would secure a position for him, but as to whether he would assist him in securing a position. These issues were not raised by appellee's pleadings and, we think, can form no basis for the judgment in this cause.

The errors pointed out require, in our opinion, a reversal of the judgment of the trial court. We have not discussed the other assignments brought forward in appellant's brief for the reason that they will, in all probability, not arise upon another trial.

The judgment of the trial court is reversed and the cause remanded.

Reversed and remanded.