RESERVE LIFE INS. CO. v. BUFORD et al.

No. 2874.

Court of Civil Appeal of Texas. Eastland.

June 15, 1951.

Rehearing Denied Sept. 7, 1951.

Margaret A. Brand, Dallas, for appellant.

Sam Boren and Thompson, Knight, Wright, Weisberg & Simmons, Dallas, for appellees.

GRISSOM, Chief Justice.

Fred Buford and Ray Feinberg, architects, entered into a written contract, on July 22, 1948, with Reserve Life Insurance Company for performance of architectural services in preparing plans and specifications for a proposed office building for said company. The part of the written contract material here is as follows:

"We agree to perform, for the above named work, professional services as follows:

"Our services shall consist of necessary conferences, preparation of preliminary studies, working drawings, specifications, large scale and full size detail drawings, the drafting of forms of proposals and contracts, and the checking of shop drawings, correlating of drawings to changes in the work and checking on the work at critical stages during construction to verify whether the work conforms to the requirements of plans and specifications. The checking of the work at critical stages during the construction shall not be construed to mean the usual architectural supervision of the work.

"You agree to pay us for such services a fee of 3% of the cost of the work.

"Payments to us on account of our fee shall be made as follows:

"(a) Upon completion of general working drawings and specifications, a sum equal to 80% of the fee, computed upon a reasonable cost estimated on such completed specifications and drawings.

"(b) Upon completion of your building and after a final audit to determine the cost of work to you, a payment shall be made for the balance of the fee, computed upon the final cost of work.

"The cost of work, as herein referred to, means the cost to you of work handled by us but such cost shall not include any architects-engineers' fees, or contractors' fees or profit."

The architects performed the services provided for in paragraph (a). The insurance company abandoned its plan to erect the building. The architects demanded payment of that portion of their fee then earned under Section (a) and upon the insurance company's failure to pay, filed suit for recovery thereof.

Reserve answered by general denial and filed a cross-action asserting, in substance, that there was an oral agreement between Reserve and the architects that if the proposed building could not be erected at approximately the amount then estimated as its cost, the insurance company would pay to the architects only the expense incurred by the architects in preparing plans and specifications. The insurance company's cross-action was based on the contention that because the architects' original estimate of the cost of erecting the building was less than the actual cost, later ascertained; that it

had paid $100,000 for lots on which to erect the building for which they had never "been offered more than $75,000.00" and that it had been further damaged by the expense of having to continue operating the insurance company's business in three different buildings.

The architects filed a motion for summary judgment, stating that their suit was on an express contract and the amount actually due was $11,037.79; that there was no genuine issue as to any material fact and they were entitled to judgment as a matter of law. Said verified motion stated that, on July 23, 1948, the architects and the insurance company entered into a written contract, a copy of which was attached, wherein plaintiffs agreed to perform services for defendant for a fee of 3% of the cost, to be computed upon a reasonable estimate of the cost of the building and that 80% of the fee was due on completion of specifications and drawings; that plaintiffs had performed said services and were entitled to be paid that part of the fee sued for; that said work was completed on August 26th and $11,-037.79 was then due.

Attached thereto was the affidavit of Buford to the effect that, about July 25, 1948, following the insurance company's acceptance of the written contract heretofore quoted from, plaintiffs began furnishing partially completed plans to Burford Construction Company for estimating the cost of the insurance company's proposed two-story building; that they conferred frequently with the president and vice president of Reserve and with Burford as the plans and specifications were furnished; that on or about August 26th, Burford Construction Company gave Reserve a guaranteed cost estimate of $542,000 "which was a reasonable estimated cost for the the building." That said cost being furnished Reserve, under the contract, plaintiffs became entitled to 80% of their fee, based on said cost, but, since the insurance company, on September 24th actually accepted the low bid of Rife Construction Company of $499,900, based upon completed plans and specifications, and the insurance company accepted said bid and tendered a

contract to Rife based on that figure; that plaintiffs had based their fee in this suit upon the amount bid by Rife and accepted by the insurance company "about which figure there can be no dispute as to reasonableness." That there was no dispute as to any material issue between plaintiffs and defendant arising out of their contract up to August 26, 1948. Attached thereto was a copy of the written contract for the architects' fee quoted from above, the bid of Rife Construction Company and its bid bond and the bid of nine contractors, showing that of Rife to be the lowest.

Defendant, on April 11, 1950, filed a motion to continue the hearing of the motion for summary judgment until its president could return home and file an affidavit, "which will controvert the facts set forth in motion and affidavit of plaintiffs for summary judgment." Thereafter, on August 2nd, judgment was rendered.

Defendant's answer to plaintiffs' motion for summary judgment asserted there was a genuine issue of fact as to the amount due the architects; that Sammons, president of Reserve, and Buford, one of the architects, had depositions on file; that their testimony showed a contract was entered into between the insurance company and the architects covering the contingency that no building be constructed upon the plans and specifications furnished by the architects and that Buford and Sammons were not in agreement as to the terms thereof. Wherefore, defendants prayed that plaintiff's motion be overruled.

Attached thereto was the affidavit of Sammons, president of Reserve, to the effect that they did enter into the written contract sued upon; that, in addition to said contract, it was agreed that if plans for the building were abandoned the architects' fee would be the cost incurred by the architects in making said plans and specifications. That the building was not constructed and the insurance company had at all times been willing to reimburse the architects for their costs. That, from the beginning of their negotiations, plaintiffs were advised that an increase in either the cost per square foot above "from $7.50 to $8.00" or a delay in construction "could cause

Reserve to abandon its plans for building." That about August 29th architect Buford suggested submitting completed plans to several contractors for bids; that "again" he agreed that if costs could not be reduced below the bid of Burford Construction Company (which was $542,000 plans for building would be abandoned and plaintiffs agreed "again" that their fee for completing said plans and obtaining bids if a building were not constructed would be based upon the architects' cost. The depositions of Buford and Sammons were taken. Mr. Yost, vice president of Reserve, was called by plaintiffs and testified.

After request for bids from many contractors, Sammons became sick and Mr. Yost took over for Reserve. Yost testified that when the bids were received, Reserve accepted Rife's bid. He was asked whether or not Reserve considered Rife's bid a reasonable bid based on the plans and specifications. His reply was that he was not an expert and that he did not know whether the bid was reasonable or not. Sammons refused to testify that the Rife bid was not reasonable. Nowhere in the record is found any evidence that Reserve considered said bid unreasonable. On the contrary, it is undisputed that the company accepted the Rife bid and tendered Rife a contract for erection of the building; that Rife stated it had made a mistake in its figures and requested permission to be relieved from its bid, which request was granted.

■ The judgment rendered is based on Rife's bid and the written contract. It is undisputed that the architects performed the services. Nowhere is there an intimation of a denial by Reserve that Rife's bid was a reasonable estimate of the cost of constructing the proposed building. When the record is analyzed, the only material dispute is evidenced by the testimony of Sammons that prior to the execution of the written contract Reserve had an agreement with the architects that if the building were not erected the architects would be paid only the expenses incurred by them in preparing plans and specifications. In oral argument it was forcefully contended that such agreement was subsequent to the written contract and based upon an independent consideration. See 10 Tex.Jur. 360. Sammons' evidence shows that such an agreement, if any, was orally made prior to execution of the written contract. Such oral agreement contradicts and varies the later written contract relative thereto in which all prior negotiations were merged. Evidence of such prior verbal agreement was not admissible. That which was said in McCamy v. General Electric Supply Corporation, 5 Cir., 185 F.2d 944, 946, in a summary judgment proceeding, is directly applicable here. See also Denman v. Hall, 144 Tex. 633, 636, 193 S.W.2d 515; Rapid Transit Ry. Co. v. Smith, 98 Tex. 553, 555, 86 S.W. 322; Jones v. Risley, 91 Tex. 1, 32 S.W. 1027; Robert & St. John Motor Co. v. Bumpass, Tex.Civ.App., 65 S.W.2d 399, 402, Writ Dis.; Shepherd v. Woodson Lumber Company, Tex.Civ.App., 63 S.W.2d 581, 583; 32 C.J.S., Evidence, § 998, pages 971, 973; 17 Tex.Jur. 844; 71 A.L.R. 550, 576; Hogan v. Crawford, 31 Tex. 633; Johnson v. Johnson, Tex.Com. App., 14 S.W.2d 805, 808; Ellerd v. Sodeberg, Tex.Civ.App., 222 S.W. 674, Dis.; Winkler v. Creekmore, Tex.Com.App., 256 S.W. 257, 259; Distributors Inv. Co. v. Patton, 130 Tex. 449, 110 S.W.2d 47, 48.

■ We have carefully considered all of appellant's contentions. There is but one question for decision, that is, whether the pleadings, depositions and affidavits show there was no genuine issue as to any material fact. Since evidence was inadmissible to prove the existence of a prior parol agreement contradictory of the subsequent written agreement on the same subject, the written agreement being unambiguous and complete, there was no such issue of fact to be determined and the court did not err in rendering a summary judgment.

The judgment is affirmed.