Roy JONES, Appellant,

v.

Robert HORTENSTINE, Appellee.

No. 6602.

Court of Civil Appeals of Texas.
Amarillo.

May 21, 1956.

Rehearing Denied June 25, 1956.

Singleton & Trulove, Lumpkin & Watson, Amarillo, for appellant.

Sanders, Scott, Saunders & Smith, Amarillo, for appellee.

PITTS, Chief Justice.

This is an appeal from a summary judgment wherein appellee, Robert H. Hortenstine, sued appellant, Roy Jones, on February 3, 1955, for recovery upon a $273,071.33 promissory note, after which appellant answered and took depositions of certain witnesses concerning the matter and the parties were thereafter heard by the trial court upon the question of a summary judgment timely presented by them. On October 11, 1955, the trial court heard and considered appellee's verified motion for a summary judgment, supported by affidavits and other exhibits attached thereto, together with appellant's answer thereto, all of the pleadings in the case, the depositions and admissions on file and the argument of counsel for both sides and thereafter found and concluded that there existed no genuine issue of any material fact and that appellee was entitled to judgment as prayed for as a matter of law, for which reasons appellee's motion for a summary judgment was sustained and judgment was accordingly rendered for the principal, interest and at-

torney fees as reflected on the face of the note. Appellant thereafter filed a motion for a rehearing which was subsequently overruled by order of the trial court, from which order appellant perfected his appeal.

The record reveals that appellant was originally represented by attorneys Lumpkin and Pipkin, with Pipkin performing the duties in first filing, on February 19, 1955, a plea in abatement and subject thereto a verified answer on the merits. A hearing was had on the plea in abatement on March 17, 1955, and the same was, on the said date, overruled by the trial court without an exception thereto being reserved by appellant. Appellee's motion for a summary judgment, with supporting affidavits and other exhibits attached thereto, was thereafter filed on August 31, 1955, with notice thereof timely served upon appellant showing a setting for a hearing thereon of date September 12, 1955, or as soon thereafter as may be convenient for the trial court. Thereafter, Hon. H. C. Pipkin withdrew from the case and Hon. E. Byron Singleton was employed by appellant, thus leaving Hon. James G. Lumpkin and Hon. E. Byron Singleton representing appellant. On September 27, 1955, appellant's said attorneys requested a commission to take the depositions of certain witnesses, including appellee, concerning the matters here in issue. Such a request for commission was granted and thereafter the said attorneys, with Singleton performing the duties, took the depositions of the said witnesses and on October 3, 1955, filed an answer for appellant to appellee's motion for a summary judgment, with the said Singleton making an affidavit thereto "from the facts evident to him from the files," and restricting the contents of his affidavit to paragraphs 3, 6, 7 and 8, shown in the said answer composed of 8 separately numbered paragraphs. It appears that thereafter Hon. James G. Lumpkin withdrew from the case as co-counsel for appellant for several months but returned to the case under employment as co-counsel for appellant only a few days before the same was submitted on appeal and argument was heard by this Court on May 7, 1956. According to the record, the depositions sought by appellant were taken on October 8, 1955, with only E. Byron Singleton representing appellant. Only E. Byron Singleton represented appellant at the hearing on the motion for a summary judgment, in perfecting the appeal, preparing appellant's brief and presenting the same, together with his oral argument, to this Court.

Appellant presents six "Points of Appeal," each containing several and some numerous subsections and devoting only a few pages of his brief to a discussion of them. Appellee has challenged appellant's brief and charges that his "Points of Appeal" are multifarious, confusing, argumentative, voluminous and do not comply with the rules for briefing or the generally accepted customs of briefing, thus making the brief very difficult to answer.

An examination of appellant's brief reveals that each point does apparently attack several distinct and separate rulings of the trial court and does apparently embrace more than one implied error of the trial court, in violation of the rules of briefing. Johnson-Sampson Construction Co. v. W & W Waterproofing Co., Tex.Civ. App., 274 S.W.2d 926, and other authorities there cited. We also observe that some of appellant's points are mere abstractions or conclusions stated multifariously without charging therein in any way that the trial court erred. Abstractions or conclusions presented in lieu of a point of error in briefing are not acceptable when no alleged error of the trial court is shown. Black v. Black, Tex.Civ.App., 240 S.W.2d 458. A point of error is an indispensable part of a brief. Wagley v. Fambrough, Tex.Civ. App., 163 S.W.2d 1072, affirmed 140 Tex. 577, 169 S.W.2d 478. A point of error should be concisely stated directing the court's attention to the alleged error relied upon for reversal. Rule 418, T.R.C.P. Mere abstractions presented as points of error violates the provisions of Rule 418. Clark v. Cohen, Tex.Civ.App., 205 S.W.2d 797. To entitle a point to be considered there must be an assignment of error. Johnson Aircrafts v. Wilborn, Tex.Civ. App., 190 S.W.2d 426.

Because of appellant's failure to comply with the rules of briefing or the generally accepted customs of briefing, we find it difficult to determine what charges he relies upon for his general complaints made. However, we shall indulge a liberal interpretation of the rules in our attempts to properly pass upon appellant's presentation made to us.

In effect, appellant contends that the note sued on was to be liquidated only from the proceeds and payments made to him by the makers of another promissory note with security thereon in the sum of $890,000, for which reason he further contends that the makers of the latter note were necessary parties to this suit and his plea in abatement should have been sustained. The note sued on was executed in the following language:

"273,071.33            Amarillo, Texas
                       March 1, 1954

"Beginning on February 1, 1955, after date, I, Roy Jones, promise to pay to Robert H. Hortenstine, or order, the sum of Two Hundred Seventy Three Thousand, Seventy One and 33/100 Dollars ($273,071.33) as follows:

"The sum of Sixty Eight Thousand, Two Hundred Sixty Seven and 83/100 Dollars ($68,267.83) being due and payable on or before the first day of February, 1955, and a like installment of Sixty Eight Thousand, Two Hundred Sixty Seven and 83/100 Dollars (68,267.83) being due and payable on or before the first day of February of each succeeding year thereafter until the entire principal is fully paid, with interest thereon from the date at the rate of four and one-half (4½%) percent per annum, the interest payable annually as it accrues in addition to the principal installment payment, for value received.

"This note, to the extent of the amount herein mentioned, represents a portion of the purchase price of the Oklahoma ranch located in Cimarron County, Oklahoma, and Baca County, Colorado, this date transferred to the said Roy Jones by the said Henry Hortenstine, Robert H. Hortenstine and Mark Hortenstine, the said deed of conveyance being incorporated in this note by reference, and to secure the credit thus extended, the said Roy Jones has this day *placed as collateral security* (emphasis ours) one certain real estate mortgage note dated the 25th day of June, A.D.1953, in the amount of $890,000.00 executed by Henry Hortenstine and Mark Hortenstine and payable to the order of Roy Jones, which said note is secured by what is commonly known as the Colorado ranch located in Kit Carson and Cheyenne Counties, Colorado, the deed to same being incorporated in this note by reference; that this note is payable from the proceeds only of the $890,000.-00 note hereinabove referred to to the extent that the payee of this note may look to the payments due on the $890,-000.00 note up to twenty-nine (29%) per cent of the said $890,000.00 note if said amount is required to pay the installments on this note.

"All past due interest and principal shall bear interest from maturity at the rate of ten percent per annum.

"It is understood and agreed that failure to pay this note, or any installment of principal or interest hereon when due, shall at the election of the holder, mature same, and it shall at once become due and payable and subject to foreclosure proceedings.

"It is hereby specially agreed that if this Note is placed in the hands of an attorney for collection, or collected by suit, or in Probate or Bankruptcy proceedings, I agree to pay ten per cent additional on the principal and interest then due thereon as attorney fees.

                       "S/ Roy Jones
                       "Roy Jones."

The record conclusively reveals that the note sued on was given to appellee by ap-

pellant in consideration for appellee's one-third interest in the ranch land therein mentioned, which land was sold and transferred by appellee, his father (Henry Hortenstine) and his brother (Mark Hortenstine) to appellant and that appellant executed separate notes to each of the three sellers as a part of the consideration at least for their respective interest in the land. The record also reveals that the collateral security note for $890,000 mentioned in the note sued on was a note executed by appellee's father and brother, Henry Hortenstine and Mark Hortenstine, on the date shown, payable to appellant herein, Roy Jones, in 20 annual installments of $30,000 each, beginning on September 1, 1954, and continuing annually for each consecutive year on the same date for a period of 20 years and the balance of the note payable on the 21st year; that the said note was executed and secured as shown in a separate transaction between appellant and the makers thereof and that appellee had nothing to do with that transaction.

Appellee sued appellant only on the $273,071.33 note, without seeking to foreclose on the collateral security real estate mortgage note executed to appellant in a separate transaction by appellee's father and brother, and the trial court's judgment rendered is against appellant only without foreclosing on the security note. The note sued on was definitely a promise to pay the principal thereof in four equal annual payments of $68,267.83 each on February 1 of each year beginning on February 1, 1955, and the same amount was to be paid for each succeeding year for three years thereafter, making four payments in all, while the security note was payable only $30,000 each year for 20 consecutive years and each of the annual payments thereof for 20 years being less than one-half of each of the four annual payments shown in the note sued on, the same could not therefore have met the larger annual payments of the note sued on. The language set out in the note sued on limited the payments thereon, if made out of the security note, to 29% of the same, which is much less than the principal amount of the note sued on. The provisions of the note sued on authorizes an acceleration of the payment due in case of default in any payment thereof, in which event an attorney fee was also authorized.

It is our opinion that the trial court was justified in concluding from the record presented that the payments of the note sued on, when the said note was construed from its four corners, were not limited to the maturity payments of the $890,000 note but that the said $890,000 was only a collateral security note, the terms of which must be followed and observed in case of a foreclosure against it, as a long term note, to satisfy the provisions of the short term note sued on. It is likewise our opinion that appellee was not required to exhaust his security before enforcing the other provisions of the note as against the original maker thereof, appellant herein, but upon a note such as the one sued on appellee could waive his right to foreclose on the $890,000 note of security executed by his father and his brother if he so desired. 6 Tex.Jur. 881, Section 222 and other authorities there cited. Since appellee did not seek to foreclose on the $890,000 note, the parties who executed that note (appellee's father and brother) were not necessary parties to this suit as a matter of law and the trial court properly so held. For these and other good and sufficient reasons, appellant's plea in abatement has been properly overruled at a previous hearing without appellant reserving any exception to the action of the court and no showing has been subsequently made for any change being made in the trial court's former order overruling the plea in abatement.

In his motion for summary judgment, appellee pleaded the execution and delivery of the note sued on with its terms therein stated and himself shown as the owner thereof, demand made upon appellant for the first installment payment thereof when due and his refusal to pay such, acceleration by election of the remainder of the installments as provided for in the note and demand for payment of the entire note with appellant's refusal to pay the same, and the placing by appellee of the note in the hands of his attorneys for collection thereof and a contract to pay the attorney fees as

provided for in the note. Each of said alleged facts was sworn to by appellee in attached supporting affidavits and further supported by the testimony given by him in his deposition taken by appellant. None of such sworn statements of facts was denied by appellant under oath and in the manners prescribed by Rule 166–A, T.R.C.P. Appellant's attorney, E. Byron Singleton, swore to a portion of appellant's answer to appellee's motion for summary judgment but he swore to such only "from the facts evident to him from the files," and no other affidavits were presented by appellant other than the sworn pleadings. An examination of the portion of the pleadings sworn to by Mr. Singleton reveal in substance that appellant claims that he was ready, willing and able to pay appellee's note sued on out of the payments made on the $890,000 security note; that suits were pending to collect the $890,000 security note but appellee refused to join him in the said suits, one of which suits was then pending before the same court that heard this action; that appellee's right to the application of the proceeds from the $890,000 was limited to 29% of the same, and, as previously herein shown, a correct calculation reveals that such limited sum is not sufficient to mature the note sued on and the said attorney further swore that there had been no payments made on the $890,000, consequently there were no funds available to make payments on the note sued on. We think it is proper to observe, however, that Hon. E. Byron Singleton and counsel for appellee both stated and agreed in open court before us on submission day and at the time the case was argued before us by them, that the previous suits filed to collect the $890,000 note had then been settled with the same attorneys of record in this suit representing the respective makers of that note and the payee (appellant herein) named in the $890,-000 note involved in those suits and that the said parties had settled the payment of that note. However, no showing has been made here to the effect that any part of the proceeds from the settlement made by the interested parties in settling the payment of the $890,000 note has been applied on the note here sued on.

It is our opinion that the trial court was justified in concluding from the record that the note sued on was payable to appellee by appellant in money and not limited to 29% of the proceeds from the collateral security note of $890,000, which note, according to the agreement of the parties, has now been settled, and that the trial court was further justified in concluding, as a matter of law, that appellant defaulted in the first payment of the note sued on, thus accelerating by election the remainder of the said note, making all of it due and unpaid.

Appellee has moved to strike the deposition of Hon. George E. McCarthy, found filed in the record, on the grounds that such deposition has not been designated by either party as a part of the record. An examination of the said deposition reveals that the said Hon. George E. McCarthy had, as an attorney, professionally represented both appellant and appellee and others in connection with the preparation of some of the exhibits here involved, for which reason he claimed his professional privilege and declined to give his testimony concerning any material facts here involved. For this reason, the said deposition can serve no purpose other than to further congest a voluminous record otherwise. Appellee's motion to strike the same is sustained and the said deposition is here ordered stricken from the record.

Appellant raises some question about failure of consideration and about appellant being handicapped and put to disadvantage by various lawyers representing him at various times as counsel. But the record before us does not support appellant's claim of a failure of consideration. In fact, the contrary has been shown by the record. Appellee's testimony given by deposition taken by appellant supports appellee's claims made in this action, notwithstanding appellant's contentions to the contrary. The record does not reflect any injustice done appellant by the trial court in connection with his own changes made in the selections of counsel to represent him. No showing is made by appellant to

the effect that he asked for more time **for** the final hearing on appellee's motion **for** a summary judgment. The record reveals that appellant appeared there through counsel and was heard. The record also reveals that the trial court was considerate of appellant's presentations made. According to the record, appellant selected Hon. E. Byron Singleton to represent him in filing his answer to appellee's motion for summary judgment, in taking the depositions of certain witnesses, in representing him at the hearing before the trial court on the summary judgment, in preparing and presenting his motion for a rehearing, in perfecting his appeal and in briefing his case and presenting it to this Court. Counsel was not crowded for time in any of these matters according to the record before us. In our opinion, these matters complained about are without merit.

 Appellant apparently seeks to raise some questions about the note sued on being a non-negotiable note, which is not here material since the named payee sued the original maker thereof and no other party is involved. Appellant seeks to raise other questions that are not material. Pleaded defenses that are immaterial or unsustainable as a matter of law do not prevent the granting of a summary judgment. Wright v. Wright, 154 Tex. 138, 274 S.W.2d 670. One who seeks to avoid liability on a written obligation such as this must clearly plead his defenses. Butler v. Price, Tex. Civ.App., 138 S.W.2d 301.

The matters of execution of the note sued on, the amount thereof, ownership, consideration, default or non-payment, acceleration by election, refusal to pay, contract with attorneys for collection, and all other material fact questions have been pleaded and conclusively established and all material matters of law have been resolved against appellant herein. In considering a motion for summary judgment, the court must determine by what it has before it whether or not any genuine issue of fact as to any material matter is presented and whether or not as a matter of law the moving party is entitled to judgment. Reese v. Davitte, Tex.Civ.App., 255 S.W.2d

1015; Salmon v. Fidelity Bank & Trust Co., Tex.Civ.App., 258 S.W.2d 837.

According to the record before us and under the law governing such matters as are here presented, it is our opinion that the trial court was justified in sustaining appellee's motion for a summary judgment and in rendering its judgment accordingly. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W. 2d 929; Ware v. Wright, Tex.Civ.App., 252 S.W.2d 1003; Hurley v. Knox, Tex. Civ.App., 244 S.W.2d 557; Reserve Life Ins. Co. v. Buford, Tex.Civ.App., 241 S.W. 2d 973; Leach v. Estate of Cassity, Tex. Civ.App., 279 S.W.2d 630; Aydelotte v. Anderson, Tex.Civ.App., 280 S.W.2d 945.

The judgment of the trial court is affirmed.